486 A.2d 382

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Billy G. DUGGER, Appellee.**

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided Jan. 9, 1985.

[black redacted box]

James R. Freeman, Dist. Atty., Stuart Suss, Asst. Dist. Atty., for appellant.

Andrew S. Wade, West Chester, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

In this appeal review is sought from an order of Superior Court, *en banc*, affirming the Court of Common Pleas of Chester County. The trial court granted appellee's motion to suppress evidence seized after officials searched appellee at the Chester County Farms Prison. In suppressing the evidence the trial court held no probable cause existed for the search and appellee did not knowingly and voluntarily consent to the search.

Superior Court affirmed the suppression order, agreeing appellee had not consented to the search. They did not accept the trial court determination, however, that probable cause was necessary to conduct a search, finding reasonable suspicion would suffice. The Superior Court also made an independent determination that it could no longer "accept" an appeal from an order suppressing evidence following the Commonwealth's good faith certification that the prosecution will be terminated or substantially handicapped. *Commonwealth v. Dugger*, 311 Pa.Super. 264, 276, 457

A.2d 877, 883 (1983). The Superior Court held that an order suppressing evidence is appealable only when it is apparent *from the record* that the order terminates or substantially handicaps the prosecution. The Commonwealth, appellant herein, petitioned this Court for appeal and we granted allocatur. After consideration, we reverse.

The facts leading to this case are as follows: On June 22, 1980, Mary Ellen Stamper, an employee of Chester County Police Radio, received a telephone call. The caller, a woman who refused to identify herself, informed Miss Stamper that appellee, Billy Dugger, was on his way from Delaware to visit his brother Eddie at the Chester County prison. The woman further explained that appellee would be attempting to deliver marijuana to his brother and that the marijuana would be hidden in balloons on appellee's person. Following this communication, Miss Stamper called the prison officials with the details.

Sometime between 11:00 and 11:30 that morning, appellee arrived at the prison and signed in for a visit. Appellee was met in the reception area of the prison by a Sergeant Phillip Walker and another institution officer. At the officers' request appellee accompanied them to a maintenance shop inside the prison where he would be afforded privacy during a search.[1]

Appellee was at this point told he was suspected of concealing contraband on his person. He was further informed that he would have to submit to a strip search upon entering the institution and if he willingly submitted, he would be searched. Appellee was also told that if he refused, he would have to leave. Appellee agreed to the search and proceeded to remove his wallet, empty his pockets, and take off his shirt. One of the correctional officers then asked appellee to take off his shoes. After doing so, three balloons, each containing marijuana were recovered.

---

1. Pursuant to 37 Pa.Code § 93.74(b), all visitors are subject to a search before and after visiting.

Appellee was arrested and charged with possession of a controlled substance [2], possession of a controlled substance with intent to deliver,[3] and introduction of contraband [4]. On October 22, 1980, a hearing was held on appellee's pre-trial motion to suppress the marijuana. As stated, the trial court ordered that the evidence be suppressed, a decision that the Superior Court affirmed.

We first address the issue of the search of the prison visitor in this case. Prison authorities conducted the instant search pursuant to the Act of May 11, 1911, P.L. 274, § 4, 61 P.S. § 384, which reads:

> The warden or superintendent of the prison is hereby authorized to search or to have searched any person coming to the prison as a visitor, or in any other capacity, who is suspected of having any weapon or other implement which may be used to injure any convict or person, or in assisting any convict to escape from imprisonment or any spirituous or fermented liquor, drug, medicine, poison, opium, morphine or any other kind of character of narcotics, upon his person.

The trial court in construing this statute held that prison authorities must apply the probable cause standard when conducting searches pursuant to the statute. The Superior Court rejected this interpretation stating:

> It is only necessary to read into the Act, first, that the person must be "reasonably suspected" of having narcotics; second, that after being informed that before he may make his visit he must submit to a search, the person must consent to be searched; and third, that the search that the warden then conducts must be a reasonable search.

*Commonwealth v. Dugger*, 311 Pa.Super. at 302–303, 457 A.2d at 897.

2. 35 P.S. § 780–113(a)(16).
3. 35 P.S. § 780–113(a)(30).
4. 18 Pa.C.S. § 5123(a).

We agree with the Superior Court's statement and we find no constitutional prohibitions against legislatively enacting a reasonable suspicion standard for prison searches.

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). A prison setting involves unique concerns and security risks, thereby necessitating more leeway in allowing searches than might be found in a non-penal environment. *See Gettleman v. Werner,* 377 F.Supp. 445, 451 (W.D.Pa.1974). A visitor comes to a prison voluntarily. If he or she refuses to be searched they may leave. If that person voluntarily consents to a search and illegal contraband is found, then the Big House may be his home.

■ While we agree with the Superior Court's reasonable suspicion standard, we must reject their determination that appellee's consent was not knowing and voluntary. Review of the record reveals appellee was informed that he was suspected of carrying contraband, and that if he wished to visit his brother he would have to submit to a strip search. He was further informed that if he did not wish to be searched he would have to leave. Appellee responded by emptying his pockets and removing his shirt. The standard of voluntary conduct which the suppression court was obliged to apply was one of non-coerced action. Appellee clearly demonstrated such with his responses.

The next issue to be resolved here concerns the question of when the Commonwealth may appeal an unfavorable suppression order.

As says President Judge Spaeth the Superior Court has been "thrashing about" upon the question of when the

Commonwealth may appeal an unfavorable suppression order. They have indeed.

"Thrashing about" is probably as good a raw description of the judicial process as any, and the process has undeniable merit. Especially, since our Superior Court is a whole world of knowledge and experience, their thinkings are a rich fund of advices and suggestions, as sought as they are welcomed. Because, however, the results of the process, by whomsoever done, are not always as good as the doing, we have set ascending choirs of thrashers, each nurtured by the other and each with opportunity and limits. Recognizing that endemic strain of fallibility in all, we have, nonetheless, agreed there must be a final thrashing. For better or for worse this Court grinds the thrashings. Maintaining that arrangement is not always easy; we are not always clear, the best of our skillful brethren can misunderstand our point, and we are sometimes clearly wrong. Clarity can hopefully be made clearer still, misunderstandings we can correct, and with the help of our brethren we can correct our errors. We rely on our brethren not only to correct and inform us, but to countenance our duties and respond by enforcing our directives. The balance cannot be maintained, if our brothers, *ex proprio motu,* correct, alter or change our directives or disobey our plain prescriptives.

In the instant case, as premised by President Judge Spaeth, there appears a slippage in the balance that might presage a gap of wider significance.

█ President Judge Spaeth, speaking for the en banc panel, seems to say, and one hopes it is not a fixed opinion, that as an appellate court the Superior Court is not required to accept an appeal without questioning its propriety. "Instead," he says, "as an appellate court we must do what the Supreme Court did, examine the record and decide for ourselves whether the suppression order terminates or substantially handicaps the prosecution." *Id.* 311 Pa.Super. at 276, 457 A.2d 883. Such a view may have its relevance in some circumstances, but it is totally untenable when the Superior Court, an intermediate appellate court, is directed

by this Court to hear an appeal. The Superior Court when directed to hear an appeal is required to do so, under the circumstances we direct.[5] They are not relieved of that duty because this Court chooses for its own reasons, to accept or deny an appeal. Their duty remains, until specifically directed otherwise. The reliance on our brief opinion in *Commonwealth v. Hill,* 497 Pa. 230, 439 A.2d 1153 (1982) as a *sub silentio,* overruling of *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), is a misapprehension of both that case and the duties of the Superior Court.

Because we disposed of a case as we did in *Hill* is not a warrant to obviate the procedure we have established to present the appeal to the Superior Court. There is a grave and profound difference between our direction to the Superior Court to hear an appeal, and our reasons for disposing of an appeal in a specific case.

As the final appellate court we determine both the propriety of hearing an appeal and direct the method it shall be heard. That we directed, in the clearest fashion, that the Superior Court is required to hear a Commonwealth appeal from a suppression hearing, and gave definitive reasons why, cannot be doubted.

In *Bosurgi,* this Court bracing for the requirements of *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), directly, specifically, and emphatically addressed the question. We said in *Bosurgi:*

From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present *all*

---

5. Our authority to adopt such standards is grounded on this Court's general supervisory and administrative authority, 42 Pa.C.S. § 1701, and specifically our authority to adopt procedural rules. 42 Pa.C.S. § 1722. Thus the Commonwealth's right to appellate review of a suppression order is based on the definition of such an order as "a final order by general rule". 42 Pa.C.S. § 5105(a).

its available evidence. In the first situation, the element of finality inherent in the order of the suppression is apparent and sufficient to render the order appealable. In the second situation, although the element of finality in the order is not so apparent it is nevertheless present. Without a right of appeal in the Commonwealth in the second situation, the Commonwealth is completely deprived of *any opportunity* to secure an appellate court evaluation of the validity of the order of suppression which forces the Commonwealth to trial without *all* of its evidence. The evidence suppressed may well mark the difference between success and failure in the prosecution; to deny the Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interests of society which it represents.

*supra,* 411 Pa. at 63, 190 A.2d at 308 (emphasis original).

■ Nothing could be clearer, more definite, more embracing of the question. The right of appeal was granted the Commonwealth to satisfy a question of elemental fairness; providing the Commonwealth with what might be their only appeal. The lament that the lower court was not told under what circumstances the suppression order substantially handicaps or terminates a prosecution is simply fatuous and evasive. They were not told because they were not empowered to ask. They were simply told to hear and determine the validity of a suppression order when the Commonwealth pleads a substantial handicap or termination. That certification is not contestable. It, in and of itself, precipitates and authorizes the appeal. The formal purpose of the Superior Court is to maintain and effectuate the decisional law of this Court as faithfully as possible. In some instances, this being one, we direct the grounds for appeal. We granted the Commonwealth an appeal, and defined it a substantial handicap whenever the Commonwealth is denied the use of *all* their evidence. We did not say that the

Commonwealth was obliged to demonstrate the need. What we did say was:

> ... the practical effects of an order granting the suppression of evidence give to the order such an attribute of finality as to justify the grant of the right of appeal to the Commonwealth....

*Commonwealth v. Bosurgi*, 411 Pa. at 64, 190 A.2d at 308. *Accord Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376 (1985).

To require that a suppression record be cluttered with questions of ultimate relevance is senseless. A suppression record ought not, and properly handled does not, disclose the ultimate relevance of a piece of evidence or why a prosecution could not go forth if that evidence is suppressed.

The relevancy of a piece of evidence can rarely be seen outside the context of the case, even then, not always clearly. Most often considerable thought and argument must be supplied before a piece of evidence is clearly discerned as relevant. All relevant evidence may not be necessary to a prosecution, but one piece of suppressed evidence may make all other evidence irrelevant. It is an argument all its own and certainly must be an argument dehors the record of a suppression court.

Fortunately, it is an argument obviated by *Bosurgi*. Such inquiry is not required. It is part of the wisdom of *Bosurgi*, that such protracted, complicated, and erudite considerations are avoided by direct access of appeal to the nub of the question, i.e., the validity of the suppression. There is no need to thrash about questions of ultimate relevancy when the ache was the suppression. One wonders why the Superior Court would opt for the further burdens of determining relevancy when they are only required to hear argument on the validity of the suppression.

■ Therefore, the Commonwealth's appeal of a suppression order is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppres-

sion order terminates or substantially handicaps its prosecution. Such certification is required as a means of preventing frivolous appeals and appeals intended solely for delay.

Given the prerequisite of the certification we hold that the Commonwealth has an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order.

Order of the Superior Court reversed and case remanded for proceedings consistent with this opinion.

NIX, C.J., and HUTCHINSON, J., file concurring opinions.

NIX, Chief Justice, concurring.

Admittedly the language of *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), is not the model of clarity. However, in my judgment it was the intention of the Court in that decision to limit the Commonwealth's right of appeal from an adverse suppression ruling to those instances where the order of suppression either resulted in the termination of the prosecution's case because of the lack of all of its evidence or "wherein the Commonwealth is *substantially handicapped* because it cannot present all its available evidence." *Commonwealth v. Bosurgi, supra*, 411 Pa. at 63, 190 A.2d at 308.

If any diminution resulting from an adverse order of suppression is to be treated as justification for the Commonwealth's right to appeal, the *Bosurgi* court's use of the term "substantially handicapped" is rendered surplusage. Consequently the requirement of a certification is totally unnecessary since the adverse suppression order itself is a matter of record. If the ruling of the Court today is intended as accepting an interpretation of *Bosurgi* which would in fact limit the right of appeal of the Commonwealth, providing for a certification which is conclusive and

not subject to challenge renders the qualification of the right illusory. The effect of the majority's opinion today under either situation is to provide an unfettered right of appeal to the Commonwealth whenever it sustains an unfavorable suppression ruling, regardless of the impact of that ruling upon the strength of its case.

From our experience since *Bosurgi*, I am convinced that an absolute right of appeal will prove to be a more manageable rule and therefore have no objection to the change. Moreover, it is obvious that the approach suggested by the Superior Court would totally frustrate the process and cannot be accepted. My reason for writing is merely to clarify my view that what is being set forth today is not the *Bosurgi* rule, but rather a new approach.

I also join in the portion of the majority opinion concerning the right of the prison authorities to search prison visitors and concluding that appellee Dugger voluntarily submitted to the search.

HUTCHINSON, Justice, concurring.

I concur in the result. The record shows that the suppression of this evidence substantially impaired the Commonwealth's case. Moreover, the suppression court was wrong in holding that this evidence had to be excluded. Unfortunately, the majority has made the same mistake as Superior Court in dealing, in a massive *dictum*, with the question of what might happen if it did not plainly appear that the suppression substantially impaired the Commonwealth's case. Under *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963), this case is plainly appealable. I would wait to deal with the issue of when the Commonwealth's appeal from a suppression order is frivolous or insubstantial until that issue is presented by an appellate record and I would further caution Superior Court to do the same.