563 A.2d 1252

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Miguel REVIERA.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1989.

Filed Sept. 8, 1989.

198

Jeffrey R. Hellman, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Dennis H. Eisman, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

BECK, Judge:

This case involves the question of the legality of an anticipatory search warrant; i.e., whether the police properly obtained a warrant to search a house based upon reliable information that controlled substances would be delivered to the house shortly after the warrant was issued. The trial court suppressed evidence seized by the police on the grounds that a warrant may not be issued in anticipation of

future criminal activity. After careful consideration, we reverse.

Our standard of appellate review is well established.

In reviewing the findings of a suppression court where the Commonwealth is appealing, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. While we are bound by the lower court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case.

*Commonwealth v. Lagana,* 517 Pa. 371, 375–76, 537 A.2d 1351, 1351–54 (1988) (citations omitted). *See also Commonwealth v. Toanone,* 381 Pa.Super. 336, 340, 553 A.2d 998, 999 (1989).

The relevant facts are as follows. On September 11, 1986, an undercover police officer received a tip from an informant that a man known as Jose was storing and selling controlled substances at 3031 North Lawrence Street in Philadelphia. Prior information from the same informant had led to the arrest of three persons and the seizure of controlled substances within the past two months. Sometime after 5 P.M., the undercover officer arrived at 3031 North Lawrence Street, knocked on the door, and told Jose that he wished to buy an ounce of cocaine. Jose said that he was waiting for a delivery of cocaine that would take place at approximately 10 P.M. He directed the officer to return to the house after 10 P.M. at which time he could purchase cocaine for $1,300 an ounce. While Jose and the undercover agent were talking, several other persons approached Jose and asked him for cocaine; those persons were also told to return after 10 P.M. that evening.

Based upon this information, the officer swore out an affidavit of probable cause and requested a warrant to conduct a nighttime search for contraband on the premises at 3031 North Lawrence Street. This warrant was approved and issued by a bail commissioner at 9:50 P.M.

Members of the Police Narcotics Unit arrived at the house at 10:20 P.M. and executed the warrant. While several policemen were searching the house, Officer Chavez kept watch over a crowd of people who had gathered across the street from the residence. Officer Chavez overheard appellee Miguel Reviera shouting to the crowd that the police had no right to search his brother's house. Mr. Reviera was arrested and charged with violations of the Controlled Substance, Drug, Device, and Cosmetic Act. Pa.Stat.Ann. tit. 35 §§ 780–101 to 780–144 (Purdon 1977 & Supp.1988).

On February 8, 1988, the trial court granted a defense motion to suppress physical evidence seized during the search of the house. The court based its decision on the grounds that as of 9:50 P.M. on September 11, 1986, the moment that the warrant was issued, the package of controlled substances had not yet arrived at 3031 North Lawrence Street. The Commonwealth filed a timely appeal to this court. Since the Commonwealth has certified in good faith that the suppression order if given effect would substantially handicap or terminate its prosecution of the defendant, we have jurisdiction to entertain this appeal. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Slaton*, 383 Pa.Super. 301, 308–309, 556 A.2d 1343, 1346 (1989) (en banc).

We must determine whether the trial court was correct in finding that the defendant's rights were violated by the issuance of what is commonly referred to as an "anticipatory search warrant". An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 1 W.R. LaFave, *Search and Seizure* § 3.7(c) at 94 (2d ed. 1987). The validity of such warrants is a question of first impression for the appellate courts of Pennsylvania. However, the great majority of state and federal courts that have considered the issue have approved the practice of

issuing such warrants.[1]  We agree that under appropriate circumstances the use of anticipatory search warrants is fully consistent with the constitutional protection against unreasonable searches and seizures.

■ The fourth amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."  Probable cause has sometimes been defined as facts or circumstances that would warrant a man of reasonable caution to believe "that an offense has been *or is being committed." Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967) (emphasis added).  *See Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948).  In *Commonwealth v. Baker*, the Pennsylvania Supreme Court recently described probable cause in slightly broader terms: "Probable cause exists when the magistrate is presented with evidence which would cause a reasonable man to believe that a crime is being, *or is about to be committed."*  513 Pa. 23, 28, 518 A.2d 802, 805 (1986) (emphasis added).  The conflict between these two standards for probable cause is more apparent than real.  We interpret both definitions as indicating that a search warrant may be issued on the basis of reliable information that criminal activity is in progress and that after the warrant is issued the crime will be completed within the near future.

■ As the Pennsylvania Supreme Court noted in *Commonwealth v. Shaw*, "A search warrant is no general

1. *E.g., United States v. Goodwin*, 854 F.2d 33 (4th Cir.1988); *United States v. Goff*, 681 F.2d 1238 (9th Cir.1982); *United States v. Lowe*, 575 F.2d 1193 (6th Cir), *cert. denied* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States ex rel. Beal v. Skaff*, 418 F.2d 430 (7th Cir.1969); *United States v. McGriff*, 678 F.Supp. 1010 (E.D.N.Y.1988); *Johnson v. State*, 617 P.2d 1117 (Alaska 1980); *State v. Cox*, 110 Ariz. 603, 522 P.2d 29 (1974); *Alvidres v. Superior Court*, 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (1974); *Bernie v. State*, 524 So.2d 988 (Fla.1988); *Commonwealth v. Soares*, 384 Mass. 149, 424 N.E.2d 221 (1981); *State v. Mier*, 147 N.J.Super. 17, 370 A.2d 515 (1977); *People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); *State v. Coker*, 746 S.W.2d 167 (Tenn.1987).  *See generally* 1 W.R. LaFave, *Search and Seizure*, § 3.7(c) at 94–100 (collecting cases).

arm for ferreting out crime, but a special proceeding, based upon present cause ..." 444 Pa. 110, 114, 281 A.2d 897, 899 (1971) (quoting *People v. Chippewa Circuit Judge,* 226 Mich. 326, 328, 197 N.W. 539, 540 (1924)). We take this to mean that a warrant must be based on information concerning past or present criminal activity. This does not mean, however, that the police are obliged to wait until a criminal scheme is brought to fruition before requesting a warrant. Where magistrates are presented with reliable evidence that contraband will arrive at a specific location within a short period of time, they may conclude that a crime is in the process of being committed, and may issue the warrant despite the fact that the contraband has not yet arrived at its ultimate destination. *Accord State v. Gutman,* 670 P.2d 1166 (Alaska App.1983); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972). We caution that a warrant cannot properly be issued based upon mere speculation that a crime might occur at some future time.

■ In *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985), the Pennsylvania Supreme Court adopted the totality of the circumstances test for reviewing the issuance of search warrants. Under *Gray:*

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime *will be found in a particular place.*

*Id.,* 509 Pa. at 484, 503 A.2d at 925 (quoting *Illinois v. Gates,* 462 U.S. 213 at 238–239, 103 S.Ct. 2317 at 2332, 76 L.Ed.2d 527 at 533 (1983) (emphasis added). *Gray* implies that the magistrate must focus upon whether evidence of crime will be discovered when the search is conducted. Significantly, the *Gray* Court did not require a finding that evidence of crime be present at the place to be searched as of the moment that the warrant is signed. We hold that a magistrate has authority to issue a search warrant where

she reasonably concludes that there is a fair probability that evidence of current or past criminal activity will be on the premises to be searched at the time the warrant is executed. *Cf. United States v. McGriff,* 678 F.Supp. 1010, 1014 (E.D. N.Y.1988) (similar reasoning).[2]

In approving the use of anticipatory warrants, we recognize that "the entire thrust of the exclusionary rule and the cases that have applied it is to encourage the use of search warrants by law enforcement officials." *Alvidres v. Superior Court,* 12 Cal.App.3d 575, 581, 90 Cal.Rptr. 682, 685 (1970). A search pursuant to a warrant is preferred over a warrantless search because in the former case it is a neutral magistrate who makes the critical determination of whether probable cause exists. *See Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Commonwealth v. Gambit,* 274 Pa.Super 571, 418 A.2d 554 (1980), *aff'd* 501 Pa. 453, 462 A.2d 211 (1983). When the police receive reliable information that a shipment of contraband will arrive at a specific location, they are faced with a fast moving situation requiring them to decide between conducting a warrantless search or risking the delay needed to secure a warrant at the last possible moment. Permitting the issuance of an anticipatory warrant allows the police a reasonable degree of flexibility in responding to crime, while ensuring the oversight of a neutral authority who can act to protect the constitutional rights of criminal suspects. *Accord Alvidres v. Superior Court, supra; People v. Glen, supra.*

At this juncture, an additional observation is in order. Implicit in the question of whether an anticipatory warrant is valid is the issue of whether the warrant allows for a sufficient degree of judicial control over the circumstances under which a search will be conducted. We em-

**2.** We decline to adopt a per se rule concerning how far in advance of an anticipated arrival of contraband a warrant may be obtained. However, under Pennsylvania law, the issuing authority must "[d]irect that the search be executed within a specified period of time, not to exceed two (2) days from the time of issuance...." Pa.R.Crim.P. 2005(d). *See Commonwealth v. McCants,* 450 Pa. 245, 299 A.2d 283 (1973).

phasize that the issuing authority should retain control as to when an anticipatory search warrant is to be executed. Before permitting the issuance of a search warrant, the issuing authority must be assured that the warrant will not be executed prematurely, i.e., before contraband or evidence of crime arrives at the location to be searched. *See United States ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969); *State v. Gutman, supra; People v. Glen, supra.* Thus, where appropriate, the issuing authority should make the execution of the warrant contingent on the occurrence of specific events or the passage of a specific period of time. *Alvidres v. Superior Court,* 12 Cal.App.3d at 582, 90 Cal. Rptr. at 686. *See Johnson v. State,* 617 P.2d 1117, 1124 n. 11 (Alaska 1980). On the other hand, there is no need to specify contingencies in warrants where the facts before the issuing authority indicate that premature execution of the warrant is unlikely.

We must now review the facts of the instant case in order to determine if the warrant was properly issued and the evidence legally seized. As we have noted, upon arriving at 3031 North Lawrence Street, an undercover officer attempted to purchase cocaine from a man who was a suspected participant in the drug selling operation. That man informed the officer, as well as others who were seeking to purchase cocaine, that a delivery of cocaine would be arriving at the premises at 10:00 P.M. that night. The officer then sought and obtained a warrant for a nighttime search of those premises. The warrant was signed by the issuing authority at 9:50 P.M. and executed at 10:20 P.M.

On these facts, we find that the evidence was sufficient to support the issuance of an anticipatory warrant. Here, the police were informed by a participant in the suspected crime that contraband would arrive at 10:00 P.M. that night. A statement by one who intends to participate in the crime that is the object of the search warrant ordinarily provides a sufficiently reliable basis for concluding that criminal activity will take place where and when he says it will.

"Where a person is an admitted participant in a crime and police secure a search warrant upon information received from him, affiant-officers need not support their claim that the informant was credible or his information reliable since the individual's admission of participation in the crime insures his reliability." *Commonwealth v. Stickle*, 484 Pa. 89, 97–98, 398 A.2d 957, 962 (1979). *Cf. United States v. McGriff, supra* (anticipatory warrant upheld where informant who was also participant in the crime told police that there would be a delivery of drugs at a specific address sometime later that evening).

We recognize that the warrant did not include any contingencies for its execution by police. There was no attempt to make the warrant contingent on surveillance by the police to corroborate in actual fact that drugs had arrived at 10:00 P.M.[3] We find, however, that under the circumstances of this case the absence of such a contingency was not a fatal defect. As stated above, the issuing authority had strong evidence based upon statements made by a participant in the crime to an undercover officer that a delivery of cocaine would occur at 10 P.M. As the warrant was not issued until 9:50 P.M., there was little danger that the warrant would be executed prematurely. *Cf. United States ex rel. Beal v. Skaff*, 418 F.2d at 433 (no unreasonable danger of loss of judicial control over search where police could not have arrived at location to be searched in advance of scheduled delivery of contraband). We conclude that the warrant was properly approved and that the search conducted pursuant to the warrant was not illegal.

In his brief as appellee, Reviera also claims that he was arrested solely because he had protested the fact the police were conducting a search of his brother's house. Even assuming that the arrest was illegal, the evidence seized from 3031 North Lawrence Street could not be

---

3. A police officer testified at the suppression hearing that the police attempted to maintain surveillance at 3031 North Lawrence Street, but that it became known to the police that there were lookouts on the street. The police then withdrew surveillance in order to avoid compromising the drug bust.

suppressed on this basis. Suppression of evidence is not available as a remedy for unlawful police conduct where the evidence was obtained by means independent of the unlawful police conduct. *See Commonwealth v. Mancini*, 340 Pa.Super. 592, 490 A.2d 1377 (1985). Since the evidence was seized pursuant to a warrant that was issued before appellee was arrested, and since the record does not indicate that appellee assisted the search in any way, we cannot regard the seizure of the evidence as the fruit of an illegal arrest.

Order reversed and case remanded for trial.

TAMILIA, J., files concurring opinion.

TAMILIA, Judge, concurring.

I join in the majority but write separately because I believe this case, though correctly decided, creates a void when considered in conjunction with *Commonwealth v. Ogborne*, 384 Pa.Super. 604, 559 A.2d 931 (1989). While I believe the majority in both cases would hold they can be distinguished, I view the underlying issues as being inseparable. Those issues may be simply stated in the following fashion:

*Reviera Issue*

May police who suspect a party of preparing to engage in criminal activity which has not culminated in the ultimate act be permitted to obtain a search warrant in anticipation of the act?

Yes, as answered by *Reviera*.

*Ogborne Issue*

When police arrest parties after a *Terry* stop resulting from surveillance which corroborates prior information which was insufficient to support an anticipatory search warrant, must the evidence obtained in the arrest be suppressed?

Yes, as answered by *Ogborne*.

In this case, the police received information from a reliable informant that appellant was dealing in drugs and

based upon that information, an undercover agent approached appellant's dwelling about 5:00 p.m. and was told drugs would be delivered for sale at about 10:00 p.m. that evening. Accordingly, a warrant was obtained and execution on the warrant after 10:00 p.m. resulted in appellant's arrest. The evidence so acquired was suppressed by the trial court as no probable cause existed. This Court now holds the use of an anticipatory warrant is proper if the information is reliable and not merely speculative. We go on to say that precautions must be taken so there is no unreasonable danger of loss of judicial control over a search where police could not have arrived at the location to be searched in advance of delivery of contraband. I have no problem with the majority in this case but I do not take our holding to be authority for the proposition that an anticipatory search warrant must issue in every case where the police have reason to believe criminal activity is to take place in the immediate future. This holding is replete throughout with caution and warning that the basis for the warrant must be heavily documented and that its *use* may not *anticipate* the crime although its *issuance* may be in anticipation of the crime. It is for this reason that we have created for ourselves, the police and issuing authorities a gray area which should not exist when the facts pose circumstances less clear than those in this case, *Reviera*.

That type of situation is presented by the facts of *Ogborne*. In *Ogborne*, the officer received a call from an informant that appellant would arrive later that evening in a black Dodge automobile at the 100 block of Saude Avenue, Tinicain Township, and to his knowledge, he would have in his possession approximately ten bundles of the drug Phencyclidine (P.C.P.). The officer did not request a search warrant because he did not think he had probable cause. (In this regard, according to our analysis in *Reviera*, he was most likely correct.) After confirming the address, appellant's identity and the presence of a black Dodge at that location through local police, a surveillance was set up and at approximately 11:20 p.m., police observed a black Dodge enter Saude Avenue and turn into a private

drive at 115 Saude. Police identified appellant as the driver. Police surrounded the car and an officer tapped on the window after showing his badge. Appellant lowered the window and the officer smelled P.C.P. coming from the car. Appellant was directed to step out of the car and upon search, nine packets of P.C.P. were found on his person and a smaller amount found in the car. At trial, appellant's motion to suppress the evidence was denied and he was convicted of possession and possession with intent to deliver. Upon appeal this Court reversed (Tamilia, J., dissenting) and reargument before the Court en banc was denied.

The *Ogborne* majority held that the officer's reliance on a *Terry* [1] investigation and search was impermissible and there was more than ample time to obtain a search warrant. What was lacking in *Ogborne* that was present in *Reviera* was the personal knowledge of the officer that drugs were being sold at the Reviera dwelling and the exact time the seller would have the drugs available for distribution. I believe this was crucial to our finding that an anticipatory warrant could issue and that it would not become a tool for a fishing expedition. Cases cited by *Reviera* in support of anticipatory warrants point out the need to make the execution of the warrant contingent on the occurrence of specific events or the passage of a specified period of time. *Ogborne* would have difficulty meeting this test. Also it is evident in *Reviera* that this is a case of first impression and the police officer in *Ogborne* did not have the benefit of our holding today that anticipatory warrants could be obtained. We reversed in *Reviera* because a learned trial judge believed the same.

Under these circumstances in *Ogborne,* the police did the best they could which was to set up a surveillance and when sufficient activity occurred to confirm their suspicions they acted to investigate further. An anticipatory search warrant which might have been obtained for the 100 block of Saude Avenue would not have been specific enough to search a car which pulled into a driveway at 115 Saude

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

210

Avenue. Attempting to obtain a search warrant under the exigencies of these circumstances would likely have resulted in the disposal of the evidence. Drug trafficking is such a volatile and fast moving criminal activity that obtaining evidence is frequently frustrated by the more deliberate pace of legal requirements. Here, where there was time and sufficient probable cause to obtain an anticipatory warrant, it is the proper way to proceed. In *Ogborne*, when there was not sufficient probable cause, by the time probable cause was established there was insufficient time to obtain a warrant. However, there was sufficient probable cause to make a *Terry* stop, followed by a legal arrest.

This case and *Ogborne* should have been joined for argument as representing different points on the continuum of anticipatory search. Had this been done, I believe the Court en banc would have seen the need for a definitive statement which would permit issuance of both anticipatory warrants and the right to proceed as in *Ogborne*, when such a warrant is not viable.