583 A.2d 1175

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Timothy FLAHERTY, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 22, 1990.

Filed Dec. 14, 1990.

Petition for Allowance of Appeal
Denied May 13, 1991.

398

---

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

Bruce A. Carsia, Pittsburgh, for appellee.

Before POPOVICH, JOHNSON and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas, Allegheny County, suppressing evidence of drugs seized from appellee's automobile. We affirm.

On appeal,[1] the Commonwealth asserts that the suppression court erred in finding that the magistrate had failed to act pursuant to probable cause when issuing the search warrant for appellee's automobile. As we have resolved to affirm the decision below on grounds that probable cause was clearly wanting,[2] we must also reach the second argument offered by the Commonwealth, to-wit: whether this search warrant, if determined to be invalid and unsubstantiated by probable cause, might properly have been relied upon in "good faith" by the executing officers.

The sole evidence in support of the warrant was an affidavit of probable cause signed by the detective and based on communications made to him by an undisclosed informant. The affidavit of probable cause reads as follows:

The affiants recieved [sic] information form [sic] a relaible [sic], confidential informant, who has been proven reliable in the past, by supplying information that lead to

1. Appeal from a suppression order is a final order subject to this court's jurisdiction once the Commonwealth certifies in good faith, as it has, that the suppression order terminates or substantially handicaps its prosecution. See, e.g., *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

2. Appellee also alleges a technical discrepancy between the areas listed to be searched on the application for search warrant and those areas listed on the final search warrant. *See* Pa.R.Crim.P. § 2006. "Each application for a search warrant ... shall: ... (c) Name or describe with particularity the person or place to be searched." We need not address the merit of this, appellee's technical sufficiency argument under Pa.R.Crim.P. § 2006(c), for a conclusion either way is clearly subordinate to our conclusion that the search warrant lacked probable cause pursuant to our constitutional commands. See Pa.Const. Art. I, section 8.

the arrest of Kim Allen for possession of marajuana [sic] with the intent to deliver in 1988, this case is stikk [sic] pending in the court system. This informant has alos [sic] supplied other information that has been proven reliable and true, but as of this time has led [sic] to an arrest or seizure on it's [sic] own information

The informant states that the actor, Tim Flaherty, is selling percocets and doldophine [sic] from his apartment at 5680 Forward Ave. Apt. 201. The informant has been to the actor's apartment within the past forty-eight hours and observed the actors [sic] selling quantities of both percocets, and dolophines, and taking orders for others over the telephone. The informant over heard [sic] conversation and was later told by the actor that his buisness [sic] is so good he bough [sic] a new cadillac and will deliver the pill to special customers using his car.

This informant supplied the license plate number for this vehilce [sic], thta [sic] being Pa. Reg TPF–1, which was checked by the affiants and found to be registered ton the actor at the Forward Ave. address. This informant was also able to give a telephone number to use to order any percocets that the informant might need, or to use in case the informant had a customer that wanted to come to the apartment, the informant was to call first and make sure that the customer was not a narc., the telephone number given is 244–2929.

The actor was observed by the affiants driving the vehicle describbed [sic] in this warrant and observed the registration number to be that supplied by the informant, noting that it appeared to be new and the color is silver. The telephone number was checked and the subscribber [sic] information is not listed.

The actor has a prior conviction for possession, and other drug law violations in 1987 and is on probation for the possession of both percocets and dolophiones [sic].

(R.R. at 5a).

A warrant to search appellee's person, his residence and his automobile was issued pursuant to this statement of

probable cause. Soon thereafter, police detectives approached appellee as he was washing the aforementioned automobile and executed the warrant. A search of the automobile revealed a jacket on the rear seat, which, upon closer examination, was found to contain an envelope filled with percocets and dolophines. Appellee was immediately placed under arrest and given his *Miranda* warnings. Next, and upon learning that the detectives intended to search his house, appellee requested to accompany them in their search. The request was allowed, and en route appellee made an incriminating statement to the effect that he obtained the pills from a man at the airport. Both the physical evidence seized from the car and the statement were suppressed, the latter following naturally as the "fruit" of a search unsupported by probable cause. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (verbal evidence no less a "fruit" than tangible evidence).

The Commonwealth accurately interprets this jurisdiction's test of probable cause as one summoning the magistrate to approach the warrant application in a common sense, nontechnical, ungrudging and positive manner. See *Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383, 1387 (1984); *Commonwealth v. Edwards,* 493 Pa. 281, 426 A.2d 550 (1981). To this end, our Supreme Court has more recently adopted the "totality of the circumstances" approach for assessing probable cause. See *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). As a result, the Pennsylvania constitutional standard essentially reflects the federal standard announced in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Important, however, is to recognize that *Gates* and *Gray* did no more than loosen the analytical straightjacket which had evolved through an overly mechanistic application of the two-prong *Aguilar-Spinelli* test.[3] The dual "basis of knowledge" and

3. The Supreme Court in *Aguilar* interpreted the Fourth Amendment to the United States Constitution as requiring that:

"veracity" prongs of *Aguilar-Spinelli* are still very much a part of probable cause analysis. What has changed is the manner through which the magistrate evaluates the affidavit of probable cause in reference to the old two-prong test:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband of evidence of a crime *will be found in a particular place.*

*Gray,* 509 Pa. at 484, 503 A.2d at 925 (emphasis added) (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332).

In the instant case, there is no contention over the informant's "veracity,"; therefore, we may assume, without deciding, that the issuing authority appropriately countenanced the statements made by the informant as set forth in the warrant application.[4] Rather, the sole area of disagreement concerns the basis of the informant's knowledge. Specifically, whether the affidavit set forth sufficient cause to believe: (1) that drugs might be found in appellee's

> the magistrate must be informed [on the application for a search warrant] of some of the underlying circumstances from which the informant concluded that the narcotics *were where he claimed they were,* and some of the underlying circumstances from which the officer concluded that the informant ... was "credible" or his information "reliable."

*Aguilar v. State of Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964) (emphasis added) (citation and footnote omitted).

**4.** Incidentally, appellee also does not challenge the reliability of the second layer of hearsay provided by appellee's own statements that he will deliver the pills via his automobile. In passing, we take note that often times when a defendant, or an informant, makes a declaration against his or her penal interest, it can be found to support the statement's reliability. See *Commonwealth v. Mazzochetti,* 299 Pa.Super 447, 445 A.2d 1214, 1218 (1982) (statement by defendant to informant that he had "a large amount" of marijuana was against penal interest and therefore reliable); see also *Commonwealth v. Kaschik,* 235 Pa.Super 388, 344 A.2d 519, 523 (1975); *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990). ... In this respect, a defendant's statement might be seen as supplanting the informant's lack of personal observation of this fact. Therefore, we also credit as reliable, without deciding, appellee's statement that he "will deliver the pill[s] to special customers using his automobile."

automobile;[5] *and* (2) that this belief existed at the time the warrant issued.[6] The satisfaction of each prong serves as a prerequisite to a finding of probable cause. Accordingly, we may limit our review to the second prong since it is here that we find the affidavit of probable cause clearly deficient.

That probable cause must exist at the time a warrant issues is firmly established in this jurisdiction. The case of *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341 (1973) enlightens the inquiry. In *Conner*, a warrant was issued to search defendant's automobile for a weapon allegedly seen by police informants therein. Absent from the affidavit of probable cause was:

> a time-frame upon which to ascertain *when* the affiant gained his information from his informants, *when* the informants themselves obtained the information they allegedly had, and if probable cause *presently* existed to believe, that[,] at the time the warrant was issued, appellant was keeping a firearm in his automobile.

*Id.*, 452 Pa. at 339–40, 305 A.2d at 345 (emphasis in original); see also *Commonwealth v. Kalinowski*, 303 Pa.Super. 354, 449 A.2d 725 (1982) (probable cause lacking where affiant fails to supply date when informant allegedly gained

**5.** Our cases have repeatedly emphasized the importance of there being enough information supplied by the informant "to enable the magistrate independently to judge the validity of the informant's conclusion that [the items to be seized] were where he said they were." *Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361 (1975) (quoting *Spinelli v. U.S.*, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637); see also *Commonwealth v. Kanouff*, 315 Pa.Super. 392, 462 A.2d 251, 252 (1983) (for a search warrant to properly issue, the magistrate must be persuaded: (1) that the items sought are connected with criminal activity; and (2) that the items will be found in the place to be searched).

**6.** The oft-quoted passage for this proposition comes from the United States Supreme Court decision of *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932):

"[I]t is manifest that the proof [necessary to establish probable cause] must be of facts so closely related to the time of the issue of the warrant so as to justify a finding of probable cause at that time." *Commonwealth v. Simmons*, 450 Pa. 624, 629–30, 301 A.2d 819, 822 (1973) (quoting *Sgro*, 287 U.S. at 210, 53 S.Ct. at 140) (emphasis omitted).

the information supplied); cf. *Commonwealth v. Edmunds,* 373 Pa.Super. 384, 541 A.2d 368 (1988) (good faith exception to probable cause found to save otherwise invalid warrant due to absence of the date of informant's observations).

█ In the instant case, the only evidence tending to implicate defendant's car was the statement made by the defendant that he "will deliver the pill[s] to special customers using his car." The informant made no indication that he had seen drugs in appellee's automobile, nor had he any reason to believe that drugs were present in the car at the time of his statement to police.[7] Following the logic of *Conner,* absent from this declaration is any reference to a time frame from which to anticipate drugs being delivered in appellee's automobile. The particular frequency of such deliveries in the past, as well as the probability that such might continue at any particular moment in the future, remains wholly a mystery. Were such deliveries made by appellee hourly, daily, weekly, monthly, or at some other interval of time? "Any selection of time on our part would be purely conjectural [—] ... [s]o too must have been the magistrate's determination." *Id.* (quoting *Commonwealth v. Simmons,* 450 Pa. 624, 629–30, 301 A.2d 819, 822 (1973)). The conclusion follows necessarily that, at the time the magistrate was asked to issue the search warrant, there could be no probable cause to believe that drugs were present in appellee's automobile.

The Commonwealth suggests that we consider case precedent applying the doctrines of "staleness" and "anticipatory

7. The fact that it was appellee's, rather than the informant's statement which lacked any reference to time, is of no moment. Whether the magistrate is presented with single or double hearsay may go to the weight of the evidence, yet bears no relation to the overarching requirement that the affidavit of probable cause establish facts from which the issuing authority can make an independent determination as to whether probable cause presently exists. Had an informant personally observed defendant deliver drugs in his automobile, the issuing authority would further require information as to the date of this observation, and the frequency of like observations. Similarly, if the issuing authority herein is to rely on defendant's own declarations as a substitute for the informant's lack of personal observation, then the declaration must include some reference to when and how frequently the defendant delivered the drugs in his automobile.

search warrants." These references are misplaced. Staleness, as the name suggests, presupposes that at an earlier point in time the information was "fresh," *i.e.,* probable cause once existed. That the Commonwealth misconceives this fundamental element is manifest by their selection of *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981), in support of their position. In *Stamps,* a police informant indicated, *inter alia,* that "in the past ten days" he had observed ten bundles of heroin in defendant's apartment, and, within the same period, witnessed defendant "leave his apartment with three bundles of heroin for sale to two other people." *Id.,* 493 Pa. at 538 & n.12, 427 A.2d at 144–45 & n.12. This, taken together with other information supplied by the informant, suggested that defendant was a volume dealer and persuaded the court that "[defendant] was engaged in a continuing course of illegal conduct[,] and that narcotic drugs were likely to be *present in his apartment on the day the warrant was issued." Id.,* 493 Pa. at 538, 427 A.2d at 145 (emphasis added).

Clearly, the *Stamps* Court relied on the informant's personal observations—their date and frequency—to infer a continuing course of conduct such that the circumstances witnessed by the informant *might still have cause to exist.* Equally clear is the absence of the same in the instant case. Here, we have no indication in the affidavit from which to establish conduct by the defendant, with respect to deliveries made using his automobile, marked with any regularity. Where there has been no *initial* showing of probable cause to believe that the items to be searched for and seized *had been* at a particular location at a particular time, then common sense points in only one direction: that it would be utter speculation to suppose they might be there at a certain later date. See *Commonwealth v. Mazzochetti,* 299 Pa.Super. 447, 445 A.2d 1214 (1982) (mere suspicion will never support a finding of probable cause).

The Commonwealth also erroneously proffers *Commonwealth v. Reviera,* 387 Pa.Super. 196, 563 A.2d 1252 (1989), to support its position. *Reviera* approved the use of antici-

patory search warrants in Pennsylvania when issued *under the appropriate circumstances.* The facts of *Reviera* were significant in that there existed reliable information to the effect that drugs were expected to arrive at a particular location, on a particular day, at a particular time. *Id.,* 387 Pa.Superior Ct. at 204–08, 563 A.2d at 1256–57. As we have already indicated above, the instant affidavit for probable cause was wholly lacking in these respects, therefore rendering *Reviera* easily distinguishable on its facts.

In sum, we are persuaded that the information provided in the warrant application is inadequate to support an independent determination by a neutral magistrate that drugs *probably* would be found in appellee's automobile *at the time the warrant issued.*

■ Having determined that the warrant to search appellee's car was issued without probable cause, we turn to the issue of whether the evidence is nonetheless admissible under the "good faith" exception to the exclusionary rule as articulated by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

First, we note that in *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989), the Supreme Court of Pennsylvania recognized that Article 1, § 8 of the Pennsylvania Constitution "may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than its federal counterpart." See also, *Commonwealth v. Haggerty,* 388 Pa.Super. 67, 72, 564 A.2d 1269, 1272 (1989) (concurring opinion by Cavanaugh, J.) *allocatur denied* 525 Pa. 577, 575 A.2d 109 (1990). Our high court, in *Melilli,* also held that Pennsylvania does not yet recognize the "good faith" exception and left for another day and another set of facts the question of whether Pennsylvania will fully adopt the "good faith" exception. Nevertheless, the Superior Court of Pennsylvania has applied a limited "good faith" exception on several occasions. See *Haggerty,* 564 A.2d at 1272; *Commonwealth v. Edmunds,* 373 Pa.Super. 384, 541 A.2d 368 (1988), *allocatur*

*granted,* 520 Pa. 595, 552 A.2d 250 (1988); *Commonwealth v. Morris,* 368 Pa.Super. 237, 533 A.2d 1042 (1987), *allocatur denied,* 520 Pa. 596, 552 A.2d 251 (1988). In *Haggerty, Edmunds* and *Morris,* the "good faith" exception was applied and evidence was admitted, despite the fact that this Court determined the respective search warrants *facially* lacked probable cause. However, in all three cases, facts sufficient to establish probable cause were known to the respective officers and issuing authorities but were inadvertently omitted from the affidavits.

Applying the limited "good faith" exception enunciated in *Haggerty, Edmunds* and *Morris,* we conclude that the lower court correctly suppressed the evidence in question. Instantly, facts sufficient to establish probable cause were known by neither the issuing authority nor the police. Neither knew precisely when, if ever, drugs were present in appellee's automobile. Neither knew when, if ever, appellee might use his car to deliver drugs to "special customers". Significantly, neither the police nor their informant had ever witnessed appellee use his car to distribute drugs.

As previously determined, the present affidavit was insufficient to establish probable cause for issuance of a warrant to search appellee's car. Accordingly, we will not expand application of Pennsylvania's limited "good faith" exception to include cases, such as that before us, where the affidavit is insufficient to establish probable cause and neither the issuing authority nor the police know of additional facts, not of record, which would be sufficient to create probable cause.

Order affirmed.