605 A.2d 360

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**John DAGNON.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1991.

Filed March 19, 1992.

Robert F. Hawk, Asst. Dist. Atty., Butler, for Com., appellant.

Alexander H. Lindsay, Jr., Butler, for appellee.

Before BECK, TAMILIA and HESTER, JJ.

HESTER, Judge:

The Commonwealth appeals from the order entered in the Court of Common Pleas of Butler County on February 8, 1991, which suppressed the results of an alcohol content test conducted on the blood serum of appellee, John Dagnon. For the reasons set forth below, we reverse that order and remand for further proceedings.

The procedural history of this case may be summarized as follows. On May 2, 1990, while investigating a two-vehicle accident that resulted in several injuries and a death, Patrolman Daniel Hahn of the Cranberry Township Police Department utilized a warrant to search the hospital records of appellee, the driver of one of the vehicles. During the course of that search, the patrolman discovered that hospital personnel had performed an alcohol content test on appellee's blood serum shortly after the collision and that this test revealed a blood alcohol content in excess of .10%. Appellee subsequently was arrested and charged with homicide by vehicle, homicide by vehicle while driving under the influence, involuntary manslaughter, reckless driving, driving while under the influence, and driving on roadways laned for traffic in violation of Section 3309 of the Pennsylvania Motor Vehicle Code.

On October 10, 1990, appellee filed an omnibus pretrial motion seeking, *inter alia,* the suppression of the serum test results. Four months later, after conducting an evidentiary hearing, the trial court determined that only the results of alcohol content tests conducted on whole blood are admissible into evidence in prosecutions for driving while under the influence. In addition, the court determined that the Department of Health (the "Department"), in contravention of its statutorily-imposed duty, neglected to promulgate rules approving procedures and equipment for blood alcohol tests and that the Commonwealth improperly failed to both investigate and disclose to the defense the treatment that appellee had received prior to the withdrawal of the blood utilized in the analysis. Accordingly, it suppressed the challenged evidence. This timely Commonwealth appeal followed.

Preliminarily, we note that the Commonwealth, in conformity with the dictates of *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), has certified that the trial court's order substantially handicaps its prosecution of appellee. Accordingly, we conclude that the present appeal is

properly before us, *see Commonwealth v. Reveria,* 387 Pa.Super. 196, 563 A.2d 1252 (1989), and address its merits.

Our standard for reviewing the propriety of a trial court's decision to suppress evidence is well-established. In *Commonwealth v. Smith,* 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990), we discussed that standard and stated:

Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Robinson,* 518 Pa. 156, 159–160, 541 A.2d 1387, 1389 (1988), citing, *Commonwealth v. Hamlin,* 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). If the evidence supports the court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Jackson,* 359 Pa.Super. 433, 519 A.2d 427 (1986). It is for the trier of fact, rather than the reviewing court, to determine credibility. *Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985).

Keeping these principles in mind, we must examine the evidence presented during the course of the suppression hearing and determine whether the law supports the trial court's suppression decision. An examination of the record reveals the following facts.

On the evening of April 15, 1990, Patrolman Daniel Hahn of the Cranberry Township Police Department arrived on the scene of a head-on collision, observed appellee in the driver's seat of one of the damaged vehicles, and discerned the odor of alcohol on his breath. Appellee subsequently was transported to Allegheny General Hospital.

At approximately 1:40 a.m. on April 16, 1990, a specimen of appellee's blood was drawn by hospital personnel. Several hours later, in conformity with Allegheny General's usual procedure, a laboratory technician spun the specimen in a centrifuge, separated the serum from the solid material, and, utilizing an enzymatic process, analyzed the serum

for alcohol content. This analysis, which was conducted solely for diagnostic purposes, revealed an alcohol reading of .186%. As the results of serum tests generally are higher than those utilizing whole blood, the technician compensated for this effect by dividing the reading by 1.18, an average factor used for this purpose. Consequently, the test revealed a blood alcohol content of .158%.

On May 2, 1990, Patrolman Hahn obtained a warrant to search appellee's hospital records. While conducting the authorized search, he discovered that the serum test had been performed and that it revealed a blood alcohol content in excess of .10%.

■ We initially consider whether the trial court properly determined that only the results of alcohol tests conducted on whole blood are admissible into evidence in prosecutions for driving under the influence and that the results of the test performed on appellee, therefore, were subject to suppression. In this regard, we note that the question of the admissibility of blood alcohol tests in DUI cases is governed by 75 Pa.C.S. § 1547(c). In pertinent part, that provision states:

In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 [driving under the influence] or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of a person's ... blood ..., which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

. . . .

(2) Chemical tests of blood ... shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. For purposes of blood ... testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September

26, 1951 (P.L. 1539, No. 389), known as "The Clinical Laboratory Act."

75 Pa.C.S. § 1547(c) (footnote omitted).

Although 75 Pa.C.S. § 1547(c) indicates that the results of blood tests are admissible in DUI proceedings and grants to the Department the authority to regulate the procedures and equipment utilized to conduct them, it provides no insight into the issue of what form the blood test must take. Instead, the provision merely refers to the generic term "blood." Since there is no question that both whole blood and blood serum may be utilized to analyze a person's blood alcohol content, we find that term to be ambiguous. Thus, in order to determine the propriety of the trial court's conclusion, we must interpret its meaning.

▮ It long has been clear that when construing the provisions of a statute, the intention of the legislature must be ascertained and effectuated. *See* 1 Pa.C.S. § 1921(a). In cases such as the present one, where the provisions are not explicit, the intent of the legislature may be ascertained by considering legislative and administrative interpretations of them. *See* 1 Pa.C.S. § 1921(c). With regard to the construction of the term "blood," we note that the Department, in performance of its regulatory function under 75 Pa.C.S. § 1547(c), published a list covering the year in which the within incident occurred that approved various laboratories to conduct blood alcohol tests utilizing both whole blood and blood serum. *See* 20 Pa.Bulletin 306. Consequently, it has interpreted the term to include blood in either of those forms. Since the interpretation that an administrative agency gives to a statutory provision that it is charged with applying is entitled to deference, *see Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517 (1977), and since we find the Department's interpretation to be reasonable, we adopt it as being in conformity with legislative intent. Thus, we find that the trial court erroneously determined that the results of serum tests are not admissible in prosecutions for driving while under the influence and improperly suppressed the challenged evidence.

■ Next, we consider the propriety of the trial court's conclusion that the Department, in contravention of its duty under 75 Pa.C.S. § 1547(c), failed to promulgate regulations regarding the procedures and equipment to be utilized in conducting blood alcohol tests and that this failure mandated the suppression of the analysis performed on appellee's blood serum. Even if we were to assume that the failure of the Department of Health to promulgate such regulations could support a suppression determination, we would find the trial court's decision to be inappropriate.

In 28 Pa.Code §§ 5.1–5.104, the Department set forth a number of regulations relating to clinical laboratories. Since 75 Pa.C.S. § 1547(c)(2) indicates that only blood alcohol tests performed by clinical laboratories are admissible in prosecutions for driving under the influence, these regulations clearly impacted upon such testing. In the various provisions, the Department considered the questions of permits, personnel, physical facilities, records, quality control, and ethical practice. In addition, it indicated who may collect specimens, defined in § 5.1 as materials derived from the human body, and the methods of both their transportation and identification. Finally, in § 5.103, the only regulation specifically relating to blood tests for alcohol content, the Department of Health stated:

Equipment used for blood analysis to determine the amount of alcohol in a person's blood which performs the analysis by means of gas chromatography, enzymatic procedures, distillation procedures or diffusion procedures is approved by the Department provided that:

(1) The equipment is located within a clinical laboratory currently licensed by the Department.

(2) The particular brand or model of equipment used and a reagent or procedures relating thereto have not been prohibited by specific notification of the Department under § 5.46 (relating to reagents and equipment).

(3) A clinical laboratory performing blood analysis with the equipment has in effect an approval to provide special

analytical services under § 5.50 (relating to approval to provide special analytical services).

As our analysis demonstrates, the Department, by the regulatory scheme set forth in 28 Pa.Code §§ 5.1–5.104, has issued extensive regulations relating to blood alcohol testing, including the procedures and equipment to be utilized in such tests. Consequently, we find that the trial court improperly concluded that the Department failed to promulgate regulations in connection with blood alcohol testing. Therefore, it erroneously suppressed appellee's blood serum analysis on this basis.

█ Finally, we consider the appropriateness of the trial court's conclusion that the failure of the Commonwealth to investigate and disclose to appellee the treatment that he received prior to the withdrawal of the sample utilized for the blood alcohol analysis warranted the suppression of the evidence in question. The trial court indicated that such development was necessary so that "experts both for the Commonwealth and Defendant could determine the effect [of the treatment], if any, on the test results." Trial court opinion at 9. As it is clear that the court based its suppression determination upon a matter affecting the *weight* to be given to the challenged evidence, and we have not been able to uncover *any* authority permitting suppression of otherwise admissible evidence on such a basis, we conclude that the court's decision was improper.

Order reversed and case remanded for further proceedings. Jurisdiction relinquished.