JOHNSON, Judge:
Tammy Lou Kendall and Natalie L. Peek, drivers of two separate vehicles, were each stopped at the same field sobriety checkpoint (the checkpoint). Subsequently, Kendall and Peek were found guilty of driving under the influence of alcohol (DUI). Kendall was also convicted of possessing marijuana. Both Kendall and Peck challenge the constitutionality of the checkpoint. In addition, Kendall asserts that the marijuana found following a search of her purse should have been suppressed. We affirm the judgments of sentence for the DUI convictions, but we reverse Kendall’s judgment of sentence for the marijuana conviction and remand the matter for further proceedings.
The facts can be summarized as follows: On July 11, 1992, the police in Fulton County, Pennsylvania, set up the checkpoint which they operated between the hours of midnight and 3:00 a.m. All cars passing through the checkpoint during this time were stopped, except for those passing through between approximately 12:30 and 12:45 when operation of the checkpoint was suspended due to *697 rain. Further, cars were not stopped during the set up and removal of the checkpoint. The checkpoint site was chosen by the State Police and the Pennsylvania Department of Transportation based on traffic analyses of alcohol-related accidents. In accordance with administrative procedures, the police issued a news release indicating generally where and when the checkpoint would be set up. Warning signs were posted approaching the checkpoint location, and the area was illuminated by lights and flares. As cars were stopped at the checkpoint, an officer asked each driver for his or her license and registration, and, if any violation of the Motor Vehicle Code was detected, the driver was detained for further investigation.
At 2:50 a.m., Trooper Maynard Gray observed Peck approach the checkpoint at a very slow rate of speed. Upon requesting Peck’s license, Trooper Gray detected an odor of alcohol. He then had Peck perform several field sobriety tests, which she failed. After her arrest for DUI, Peck admitted that she had been drinking. Subsequently, a blood alcohol test showed Peck’s blood alcohol level to be .201%. An officer later stopped Kendall at the checkpoint and arrested her when she, too, failed the field sobriety tests. Trooper Stephen Shelley then searched Kendall’s purse before transporting her to the hospital for blood alcohol tests, and he discovered two marijuana roaches inside a small change purse. As a result, she was also charged with possession of marijuana.
Prior to trial, Kendall and Peck filed motions to suppress which were denied. Following a bench trial, the court found Kendall and Peck guilty of DUI, and further found Kendall guilty of possession of marijuana. Their post-trial motions were filed and denied. Thereafter, the trial court sentenced both Kendall and Peek to a term of imprisonment of 48 hours to 28 months for their DUI convictions, and ordered that they each pay a $400 fine. In addition, Kendall received a suspended sentence and 30 days’ probation for the possession charge. These appeals followed and, by stipulation, were consolidated for our review.
On appeal, Kendall and Peck acknowledge the legality of sobriety checkpoints conducted in a non-arbitrary fashion. They argue, however, that the police officers conducting this checkpoint violated their Fourth and Fourteenth Amendment right to privacy by allowing some cars to pass through the checkpoint unstopped, in violation of the predetermined administrative procedures. Kendall further argues that the marijuana discovered during the search of her purse should have been suppressed as the result of an illegal search.
We note that when reviewing the denial of a motion to suppress, we “determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we will consider the evidence of the prosecution’s witnesses and so much of the evidence of the defense as, read in the context of the record as a whole, remains uneon-tradicted.” Commonwealth v. Brundidge, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993) (citation omitted).
First, Kendall and Peck contend that the checkpoint in this case was unconstitutional because the police officers allegedly failed to stop all ears entering the checkpoint, as required by predetermined procedures. Thus, they claim that the resulting arrests were invalid, and any evidence gathered therefrom should be suppressed. Our supreme court has upheld the constitutionality of “systematic, non-discriminatory, non-arbitrary roadblocks.” Commonwealth v. Blouse, 531 Pa. 167, 173, 611 A.2d 1177, 1180 (1992); see also Commonwealth v. Myrtetus, 397 Pa.Super. 299, 580 A.2d 42 (1990). In Blouse, the court adopted guidelines for a constitutional roadblock:
First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection^] it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by *698 intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.
Blouse, 531 Pa. at 172, 611 A.2d at 1180, quoting Commonwealth v. Tarbert, 517 Pa. 277, 293, 535 A.2d 1035, 1043 (1987) (plurality). The court further held that “[substantial compliance with the guidelines is all that is required to reduce the intrusiveness of the search to a constitutionally accepted level.” Id.
In the present case, Kendall and Peck maintain that “even though the State Police were to stop all vehicles that entered the eheekpoint[, they] did not follow their prefixed standard and were allowed to exercise their own discretion.” This contention is meritless. First, the trial court found, and we agree, that the preliminary procedures of setting up the checkpoint were followed here. In an apparent effort to show that the checkpoint was operated in an arbitrary manner, the defense offered the testimony of several persons who stated that they passed through the checkpoint without being stopped. However, a review of the transcript reveals that all vehicles, except a state police cruiser, were stopped during the checkpoint’s operation. See Omnibus Pretrial Hearing, January 19, 1993, at 16, 29, 40. Defense evidence to the contrary need not be considered. Brundidge, supra.
Even if we were to consider defense evidence, we find that it can be reconciled with the officers’ testimony. As previously stated, cars were not stopped during the set up and removal of the checkpoint, and the operation was temporarily suspended due to rain. Reviewing the testimony of defense witnesses, we find it likely that they passed through the checkpoint during one of these periods when the checkpoint was not in operation. See N.T., supra, at 81, 58, 66, 68, 70 and 76.
From our examination of the record, we agree with the trial court that the officers conducted the checkpoint in a systematic, non-discriminatory and non-arbitrary manner. See Blouse, supra. Thus, we conclude that the trial court did not err in denying the suppression motions insofar as they challenge the validity of the checkpoint. Accordingly, we affirm Kendall’s and Peck’s judgments of sentence for their DUI convictions.
Next, Kendall asserts that Trooper Shelley’s search of her purse and discovery of the marijuana was an illegal search, and, therefore, the evidence should have been suppressed. At trial, Officer Shelley testified that prior to transporting Kendall to the hospital for blood tests, he informed her that he would have to search her purse for weapons. The officer further testified that upon opening the purse, he saw a package of cigarette rolling papers. Believing that the purse contained drugs, the officer continued to search the purse. He then opened a small change purse located within the larger handbag and, inside a pocket of the change purse, discovered a baggie which contained two marijuana roaches.
First, we agree that Kendall was validly arrested for DUI, and this fact clearly permitted a search for evidence relating to the DUI charge. See Commonwealth v. Macek, 218 Pa.Super. 124, 279 A.2d 772 (1971). Moreover, it is unreasonable to expect a police officer to place a suspect in his squad car for transport to another site without first taking reasonable measures to insure that the suspect is unarmed. Compare Commonwealth v. Davidson, 389 Pa.Super. 166, 174-75, 566 A.2d 897, 900-01 (1989), appeal denied, 525 Pa. 624, 578 A.2d 412 (1990). On that basis, the officer’s search of the purse for weapons was justified. However, after discovering that the purse contained no weapons, we can find no legitimate reason for the officer’s continued search of the purse and the opening of the change purse found therein.
Officer Shelley’s reason for continuing the search was that in his experience, “[he had] never met anyone that used the rolling paper for anything else besides marijuana.” N.T., supra, at 48. Consequently, he assumed that a further search of the purse, and the seizure of the marijuana *699 therein, was justified. We can find no authority, however, under which cigarette paper, by itself, would be considered contraband or that the possession of such paper is a violation of the law. The conclusions drawn by Officer Shelley amounted to no more than a mere hunch that drugs would be found in the purse. Moreover, we fail to understand how the discovery of legal cigarette rolling paper justified the officer’s further search of the small change purse.
We are aware of cases in which it was found that a search incident to a lawful arrest required no further justification. See Commonwealth v. Guzman, 417 Pa.Super. 364, 612 A.2d 524 (1992), appeal denied, 535 Pa. 614, 629 A.2d 1377 (1993); Commonwealth v. Henry, 358 Pa.Super. 306, 517 A.2d 559 (1986). These cases, however, are factually distinguishable from the present case. In Guzman, an informant told the police that the defendant would be delivering two kilos of cocaine to his apartment, and he gave the police a specific description of the defendant and the ear he would be driving. When the defendant arrived, the officers observed that he and his car matched the description given by the informant. The officers also noted that he was carrying a satchel which was large enough to hold the two kilos of cocaine. The police then arrested the defendant and searched his satchel. Clearly, the police already had reliable information that the satchel defendant was carrying at the time of his arrest contained drugs. In Henry, an officer stopped the defendant for speeding. The defendant offered to pay the ticket and retrieved a box from his car. The officer, however, became suspicious when the defendant blocked his view of the box. Believing that the defendant had a gun, the officer grabbed him and opened the box. The officer observed drugs lying in plain view, arrested the defendant, and then conducted a further search of the box.
Neither of these decisions support the officer’s continued search of Kendall’s purse, nor does the Commonwealth cite to any other authority which would support the position that the continued search was incident to a lawful arrest. Here, the initial search of the purse was for weapons. However, the officer admitted that the reason he continued to search the purse was because he believed the purse contained drugs, not weapons. The officer never testified that he suspected the small change purse contained a weapon, nor did he have any reliable information to indicate the same. In addition, there is nothing in the record which suggests that a further search of the purse would have yielded additional evidence pertaining to the DUI charge. Further, the officer discovered the marijuana inside a pocket of a small change purse located within the handbag, not in plain view. Consequently, we will not extend the search incident to arrest exception to these circumstances.
Because the warrantless search of the change purse containing the marijuana roaches was not incident to the arrest for DUI, nor done to protect the officer, the evidence should have been suppressed. Accordingly, we reverse Kendalls judgment of sentence for the possession of marijuana charge and remand the case for a new trial at which the Commonwealth cannot introduce the illegally seized evidence.
Judgments of sentence for DUI convictions AFFIRMED.
Judgement of sentence for possession of marijuana REVERSED and REMANDED for proceedings not inconsistent with this Opinion.
OLSZEWSKI, J. files a concurring and dissenting opinion.