654 A.2d 1058

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Bridget Dale BAER.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1994.

Filed Dec. 6, 1994.

Reargument Denied Feb. 9, 1995.

438

Iva C. Dougherty, Asst. Dist. Atty., Reading, for Com., appellant.

Jeanne Trivellini, Reading, for appellee.

Before McEWEN, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge:

The Commonwealth takes this appeal from the Order of January 28, 1994 granting defendant's motion to suppress evidence.[1]

 As an initial matter, we note that when reviewing the Commonwealth's appeal from the decision of a suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Elliot,* 416 Pa.Super. 499, 611 A.2d 727 (1992). When the evidence supports the trial court's findings of fact, we are bound by such findings, and this Court may reverse only when the legal conclusions drawn from these facts are erroneous. *Id.*

We agree with the findings of fact of the trial court as follows.

1. Patrolman Richard Hicks of the Tulpehocken Police Department observed a vehicle go through a posted stop sign intersection at Godfrey and Rehrer Streets, Tulpehocken Township, Berks County, Pennsylvania on October 21, 1993 at approximately 1:09 A.M.

2. After stopping the vehicle, Patrolman Hicks requested the driver to produce his driver's license, registration card and proof of insurance.

---

1. In order to appeal from an unfavorable suppression Order, the Commonwealth must certify in good faith that the suppression Order terminates or substantially handicaps its prosecution. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985). The Commonwealth has complied with that request in this case. *See also* 42 Pa.C.S. § 5105(a).

3. The driver gave the officer his driver's license and a registration card for the vehicle that was in a different name.

4. Patrolman Hicks asked the operator who owned the vehicle to which the operator responded a friend named Brian.

5. The operator could not tell the officer the last name of his friend.

6. When the vehicle was initially pulled over, the Defendant was seated in the rear passenger seat.

7. Patrolman Hicks requested the operator to get out of the vehicle to further investigate the ownership of the vehicle.

8. After further questioning of the operator, Patrolman Hicks told the Defendant to get out of the vehicle.

9. As the Defendant was getting out of the vehicle, Patrolman Hicks observed a glass tube in the Defendant's jacket pocket that was being partially concealed by the Defendant's hand.

10. Patrolman Hicks asked the Defendant to remove her hand. She failed to do so.

11. Patrolman Hicks assisted her in removing her hand from the pocket and at the same time took the glass tube out of the pocket.

12. A further search of the jacket revealed two packets of cocaine.

(Slip Op., Keller, J., 1/28/94, pp. 1–2.)

From these findings of fact, the trial court concluded that 1) Officer Hicks lacked a reasonable suspicion that appellant was involved in criminal activity or was armed and dangerous, and 2) the order by Officer Hicks to appellant to get out of the vehicle was violative of the fourth amendment to the United States Constitution, and, therefore, all evidence seized and flowing therefrom was inadmissible. *Id.* at 3.

It is hornbook law that the fourth amendment to the United States Constitution as well as Article I, § 8 of the

Pennsylvania Constitution protect citizens from "unreasonable searches and seizures," and evidence obtained from an unreasonable search or seizure is inadmissible at trial. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Supreme Court, however, also has held that a police officer may conduct a "stop and frisk" of an individual "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" so long as the officer is "able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity." *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). Moreover, a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Vehicle Code is being or has been violated. *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992).

■ Turning, then, to the case before us, it appears the suppression court relied upon *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), in reaching its conclusion the evidence seized was inadmissible, a conclusion the Commonwealth contends is contrary to both the holding and reasoning in *Elliott.*

In *Elliott,* a state police trooper stopped an automobile driven by Elliott for a violation of the Vehicle Code. Elliott was accompanied by one, Troy Ray. The trooper approached the driver's window and asked Elliott for his license and registration, and noticed a bag of ice with beer in it located behind the passenger's seat where Ray was sitting, as well as a strong odor of alcohol emanating from the vehicle and several empty beer bottles strewn about its interior. Elliott was over 21 years of age, but the trooper suspected Ray was not of legal drinking age and therefore asked for some identification. Ray had none, but informed the officer he was 19 years old. The trooper then requested Ray to step out of the vehicle. As he did so, an open bottle of beer fell from the car to the ground. As the trooper bent down to pick up the bottle, he observed a clear, plastic bag containing what appeared to be marijuana protruding from under the passenger's seat. The trooper seized the bag, confirmed his suspicion the

substance was marijuana and, detecting the odor of alcohol on Ray's breath, ordered Ray and Elliott to place their hands on the police cruiser. The pat down search disclosed a folding knife on Ray's person and marijuana and drug paraphernalia on Elliott. Subsequently, other narcotics were discovered in the vehicle, and the men were charged with various violations of the Controlled Substance, Drug, Device, and Cosmetic Act, 35 P.S. § 780–101 *et seq.* *Id.* at 540–42, 546 A.2d at 656.

The trial court in *Elliott* found the trooper's initial stop of Elliott's vehicle for a suspected Vehicle Code violation was reasonable, but ordering Ray out of the vehicle constituted an unreasonable intrusion on his personal security. The suppression court reached its decision on the basis of its interpretation of *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), "and concluded that that case stands for the proposition that a police officer may only order a passenger out of a vehicle when he possesses a reasonable suspicion that he is armed and dangerous." *Elliott, supra* at 545, 546 A.2d at 658 (footnote omitted).

In reviewing the suppression court, this Court stated in *Elliott:*

[T]he initial stop of the Elliott vehicle was reasonable under the circumstances. The more difficult question is whether the suppression court erred in concluding that Trooper Heckman's order to Ray, the passenger, to step from the vehicle constituted an unreasonable invasion in the absence of a reasonable suspicion that he was armed and dangerous. We believe that the suppression court erred in so concluding. The court's error results from a misapprehension of the United States Supreme Court's ruling in *Mimms, supra.*

 * * * * * *

In finding that the order to get out of the car was not an unreasonable seizure, the Court stated:

We think it too plain that the State's proffered justification—the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require

that police officers take unnecessary risks in the performance of their duties.' And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. 'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. . . .' [In addition], [t]he hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations. . . . Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis. The driver is being asked to expose to view very little more of his person that is already exposed. The police have already decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a 'serious intrusion upon the sanctity of the person', but it hardly rises to the level of a 'petty indignity.' What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns of the officer's safety.

*Id.* at 110–111, 98 S.Ct. at 333. (citations omitted).

In view of this reasoning, we believe that Trooper Heckman was justified in ordering Ray, the passenger, out of the car. Indeed, the safety of the officer, which is the proffered justification for ordering the driver out of the vehicle, applies with equal force to the passenger of a vehicle stopped for a traffic violation. *Id.* at 123, 98 S.Ct. at 339 (Stevens, J., dissenting). *Accord Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209 (1984), quoting *United States v. Berryhill*, 445 F.2d 1189 (9th Cir.1971) (*Terry* type of limited intrusion extends to companions of arrestee capable of accomplishing the harmful result). Additionally, Trooper Heckman did not simply order Ray out

of the vehicle as a matter of course, but was able to articulate a tenable reason for his actions. Trooper Heckman observed beer on ice behind the passenger's seat and empty beer bottles throughout the car. He also believed that Ray looked under 21 years of age. When Ray told Trooper Heckman that he was only 19 years old, the Trooper had reasonable suspicion that criminal activity was afoot. In other words, a reasonable person in the position of the officer could conclude that Ray was violating the law by engaging in under age drinking. Trooper Heckman's reason for ordering Ray to exit the vehicle was that he wanted to evaluate whether he could detect alcohol on Ray's breath. Under these circumstances it was clearly reasonable for Trooper Heckman to order Ray out of the vehicle.

The fact that Trooper Heckman admittedly did not think that Ray was armed and dangerous is of no consequence to our finding that the order to get out of the car was reasonable. The *Mimms* case makes it clear that the officer need not articulate any reason for ordering the driver from the vehicle when the vehicle is lawfully detained for a traffic violation. Indeed, the officer in *Mimms* could articulate no reason for ordering Mimms out of his vehicle. It was merely his practice to order the occupants out of the vehicle as a matter of course during a traffic stop.

\* \* \* \* \* \*

A careful dissection of *Mimms* reveals that the trial court erred in reaching this conclusion. *Mimms* clearly holds that "officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." *New York v. Class,* 475 U.S. 106, 115, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986); [*United States v. Hardnett,* 804 F.2d 353, 358 (6th Cir.1986).] We need not go so far as to hold that an officer who has lawfully stopped a vehicle for a traffic violation may order a passenger out of the vehicle as a matter of course, in the absence of either a reasonable suspicion that the the [sic] occupant is involved in criminal

activity or that he is armed and dangerous. While the rationale used in *Mimms* would seem to suggest this result, we simply hold today that where a police officer has lawfully stopped a vehicle for a traffic violation, he may order a passenger to alight from the vehicle when he has an articulable basis to believe that criminal activity is afoot without violating the Fourth Amendment.

*Id.* at 549, 546 A.2d at 659–660.

Similarly, in a recent case, *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709 (1992), this Court reversed an Order suppressing evidence seized from a passenger in an automobile. In *Morris*, a car was stopped for failing to signal a right-hand turn. When the police officer approached the car, he observed Morris, a passenger, stuffing a brown paper bag under the seat. The officer ordered Morris out of the car, examined the bag and found it to contain vials of a substance he believed, and was later confirmed, to be crack cocaine. The officer patted Morris down for weapons and placed him under arrest.

The *Morris* Court followed the *Mimms* and *Elliott* rationale that concern for the safety of police officers must allow for the de minimis intrusion required in ordering drivers and passengers out of vehicles. Indeed, the *Morris* Court stated in a footnote:

> Though not a question before us, we point out that there would appear to be no basis for distinguishing between an officer's authority to order a driver from a car, and an officer's authority to order a passenger from a car when the officer reasonably fears in either case for his or her safety or believes that criminal activity is afoot.

*Id.* at 349, 619 A.2d at 712 n. 2.

Although stated as dicta in *Morris*, we agree with the above statement, and we now adopt it as our holding in this case. Put simply, we hold today that after a valid traffic stop, a police officer may order a driver or a passenger from a vehicle when the officer reasonably believes that criminal activity is afoot *or* fears for his safety. In this case, the facts clearly

demonstrate that Officer Hicks had a reasonable suspicion that criminal activity was afoot, i.e., that the car may have been stolen. This suspicion justified ordering either occupant out of the car to further his investigation, and concern for the officer's safety justified ordering the other occupant out of the vehicle. For this reason, we reverse.

Defendant also argues that the Commonwealth waived the argument that the stop was a legitimate *Terry* "stop and frisk" by not raising it at the suppression hearing. This claim is entirely without merit, and we again cite with approval a footnote from *Morris*.

> We find that the assistant district attorney by citing Pennsylvania cases which rely on *Terry* amply raised the argument. In any case we are not bound to consider only legal arguments raised in the trial courts; we are free to consider any issue properly preserved on any legal grounds we find appropriate. Pa.R.A.P. 302(a). The Commonwealth vigorously raised the *issue* that suppression was inappropriate in this case.

*Id.* at 349, 619 A.2d at 712 n. 3.

Order reversed. Remanded for proceedings consistent with this decision.

Jurisdiction relinquished.

McEWEN, Judge, concurring and dissenting:

While I hasten to agree with the eminent author of the perceptive and persuasive majority opinion that a police officer may properly request a passenger to alight from a motor vehicle whenever "the officer reasonably believes that criminal activity is afoot or fears for his safety", I am compelled, nonetheless, to the conclusion that such a finding fails to provide any basis upon which to justify the warrantless search of the passenger. *See: Commonwealth v. Kendall,* 437 Pa.Super. 139, 145–146, 649 A.2d 695, 698–99 (1994). While the officer had the clear and certain right to conduct a *Terry* frisk for weapons upon asking appellee to alight from the vehicle, the police officer was precluded, absent probable cause, from

escalating the *Terry* frisk to a search of the contents of the appellee's pockets.[1] Thus it is that I would affirm the order entered by the distinguished Judge Scott D. Keller.

1. The lack of probable cause for the search was undoubtedly the basis for the forthright admission of the prosecutor that "I agree that it is questionable with the facts of this case, but I'm submitting this case to you for this hearing because of the fact that I think it is questionable and it is close...."