J-A15031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIN BROPHY-DESANTE, | : | |
| | : | |
| Appellant | : | No. 1849 MDA 2016 |

Appeal from the Judgment of Sentence October 20, 2016
in the Court of Common Pleas of Berks County,
Criminal Division, No(s): CP-06-CR-0005199-2015

BEFORE: MOULTON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 23, 2017**

Erin Brophy-Desante ("Brophy-Desante") appeals from the judgment of sentence imposed following her conviction of possession of a controlled substance. ***See*** 35 P.S. § 780-113(a)(16). We affirm.

On August 26, 2013, at approximately 9:00 p.m., Muhlenberg Township Police Officer Thenard Caraballo ("Officer Caraballo") received a dispatch notification regarding a SAM[1] crisis requiring police assistance. SAM crisis personnel had notified the Muhlenberg Township Police Department that a client (Brophy-Desante) was on the phone, and they believed that, based on her history, she should be taken to the hospital for

---

[1] SAM (Service Access and Management) provides mental health services in Berks County. ***See*** N.T. (Pretrial Hearing), 2/11/16, at 4-5.

an involuntary emergency examination and treatment, pursuant to section 302 of the Mental Health Procedures Act ("302 commitment").[2]

Officer Caraballo proceeded to Brophy-Desante's home, and waited for Officer Chris Orzech ("Officer Orzech") to arrive. Both officers approached the residence, and Officer Caraballo knocked on the door and announced that they were police officers. Brophy-Desante opened the door, but became uncooperative when the officers informed her that they had received a report from SAM, and were directed to take her into custody for a 302 commitment. Brophy-Desante moved toward the rear of the residence, and the officers placed her in handcuffs.

Brophy-Desante was not wearing shoes at that time, so the officers asked her what she would like to wear. Brophy-Desante pointed to a pair of sneakers in her kitchen. The officers escorted Brophy-Desante to a chair at her kitchen table, and assisted her in putting on her sneakers. The officers then asked Brophy-Desante whether there was anything else she needed to take with her. Brophy-Desante asked for her purse, and indicated that it was on the bathroom floor. Officer Orzech retrieved the purse.

Officer Caraballo informed Brophy-Desante that he would have to search her purse, because she was in police custody, and because she was going to be admitted to a secure area of the hospital for treatment. When Officer Caraballo searched the main compartment of the purse, he

---

[2] ***See*** 50 P.S. § 7302.

discovered a transparent plastic makeup container, inside of which were two plastic bags—one containing a white, powdery substance, and the other containing a "rock" about the size of a quarter. Officer Caraballo asked Brophy-Desante if the substance was cocaine, and she replied that it was "meth." Officer Caraballo asked Brophy-Desante to clarify whether she meant methamphetamine, and she said yes. Officer Josh Candee performed a NIK test[3] prior to inventorying the evidence, and the substance tested positive for methamphetamine.[4]

On February 1, 2016, Brophy-Desante filed an Omnibus Pretrial Motion, including a Motion to suppress the physical evidence recovered from her purse, on the basis that the evidence was the result of an illegal search, as well as her statements to the police, on the basis that she was subjected to a custodial interrogation without being informed of her ***Miranda***[5] rights. The suppression court conducted a hearing, during which Officer Caraballo was presented as the only witness. The suppression court denied Brophy-Desante's Motion to suppress.

---

[3] A NIK test (Narcotic Identification Kit) is a presumptive field test used to identify drugs and controlled substances.

[4] A sample of the substance was also sent to the state police lab for testing, but the results of that test were not available at the time of the pretrial hearing.

[5] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Following a jury trial, Brophy-Desante was convicted of one count of possession of a controlled substance. On October 20, 2016, the trial court sentenced Brophy-Desante to one year of probation. Brophy-Desante filed a post-sentence Motion, which the trial court denied. Brophy-Desante subsequently filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Brophy-Desante raises the following issues for our review:

1. Whether the [suppression] court erred in denying [Brophy-Desante's M]otion to suppress the contraband seized from her purse in that:

    a. The police exceeded the scope of a valid search for officer safety[;]

    b. The plain view exception to the warrant requirement does not apply where the officer was not at a lawful vantage point, the incriminating nature of the substance was not immediately apparent and the officer did not have lawful access to the contraband[;] and

    c. The Commonwealth failed to establish facts that would support the doctrine of inevitable discovery?

2. Whether the [suppression] court erred in denying [Brophy-Desante's M]otion to suppress her statement to police[,] where the police failed to provide [Brophy-Desante] with **_Miranda_** warnings at the time that [Brophy-Desante] was subject to a custodial detention[,] and the officer's inquiry about the substance seized from [Brophy-Desante's] purse was calculated to, expected to and likely to evoke admission from [Brophy-Desante]?

Brief for Appellant at 5 (issues renumbered).

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the

- 4 -

suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

In her first claim, Brophy-Desante argues that the trial court erred in denying her Motion to suppress the physical evidence recovered during the search of her purse. Brief for Appellant at 17. Brophy-Desante contends that Officer Caraballo exceeded the scope of a valid search for officer safety because the makeup bag could not have contained a weapon. *Id.* at 17-18. Brophy-Desante also asserts that the Commonwealth had not satisfied its burden regarding the 302 commitment, and therefore, Officer Caraballo was not at a lawful vantage point when he observed drugs in Brophy-Desante's purse. *Id.* at 19-20. Brophy-Desante claims that the incriminating character of the substance was not immediately apparent to Officer Caraballo, and that he did not have a lawful right to access the makeup bag contained therein. *Id.* at 20-21. Additionally, Brophy-Desante argues that the inevitable discovery doctrine does not apply to this case, because the Commonwealth had not properly established whether the hospital, as part of

its intake procedures, would have conducted an inventory search of Brophy-Desante's personal items. *Id.* at 21-23.

Both the United States and Pennsylvania Constitutions protect people from unreasonable searches and seizures. *See Commonwealth v. McCree*, 924 A.2d 621, 626 (Pa. 2007). Although involuntary civil commitments are not based on criminal standards and procedures, persons subjected to involuntary civil commitment proceedings are entitled to the protections afforded by the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Fleet*, 114 A.3d 840, 844 (Pa. Super. 2015); *see also id.* (stating that "[i]t is the intrusion by the government, not the status of the citizen, that triggers protection and inquiry into the reasonableness of the intrusion."). Additionally, the Commonwealth bears the burden at a suppression hearing to establish, by a preponderance of the evidence, that the evidence was properly obtained. *Commonwealth v. Jackson*, 62 A.3d 433, 438 (Pa. Super. 2013).

Notably, Brophy-Desante did not challenge the validity of the 302 commitment in her Omnibus Pretrial Motion, during the pretrial hearing, or in her post-sentence Motion. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also generally Fleet*, 114 A.3d at 845 (considering whether the Commonwealth met its burden of proving that requirements for

the issuance of a 302 warrant had been met, where seizure occurred as the result of the execution of a 302 warrant, **and** appellant challenged the propriety of the warrant). Additionally, section 302 of the Mental Health Procedures Act allows police officers to transport individuals to an appropriate facility for an involuntary emergency examination. 50 P.S. § 7302(a). Here, Officer Caraballo testified that he responded to Brophy-Desante's home based upon information from SAM that Brophy-Desante should be taken to the hospital for a 302 commitment. **See** N.T. (Pretrial Hearing), 2/11/16, at 4-5, 13. We therefore agree with the trial court's conclusion that Officer Caraballo and Officer Orzech were lawfully present in Brophy-Desante's home, and Brophy-Desante was lawfully seized for the purpose of a 302 commitment. **See** Trial Court Opinion, 1/13/17, at 7-8; **see also Jackson**, 62 A.3d at 440 (concluding that officers were lawfully present in appellant's home to execute a 302 warrant when they observed, in plain view, controlled substances, and those observations supported the issuance of a search warrant).

After Brophy-Desante was lawfully seized, the officers were permitted to search Brophy-Desante and the items she asked to take with her, for safety purposes, before transporting her to the hospital. **See Commonwealth v. Kendall**, 649 A.2d 695, 698 (Pa. Super. 1994) (stating that "it is unreasonable to expect a police officer to place a suspect in his squad car for transport to another site without first taking reasonable

measures to insure that the suspect is unarmed."). At the pretrial hearing, Officer Caraballo testified that when he asked Brophy-Desante if she needed to take anything with her to the hospital, she specifically requested her purse and told the officers where to find it. *See* N.T. (Pretrial Hearing), 2/11/16, at 8-9, 14. According to Officer Caraballo, when an individual is in custody, it is standard procedure to search the person, as well as any personal belongings that would be carried into the police car. *See id.* at 9. Officer Caraballo testified that Officer Orzech retrieved the purse, and Officer Caraballo informed Brophy-Desante that anything she wanted to take along would be searched as a safety precaution. *See id.* at 9, 15. Officer Caraballo testified that when he looked into the main compartment of the purse, he noticed a transparent plastic makeup container, inside of which were two plastic bags—one containing a white, powdery substance, and the other containing a "rock" about the size of a quarter. *See id.* at 10, 11, 15. Officer Caraballo also testified that the container was visible as soon as he opened the purse, and the contents of the container were immediately visible. *See id.* 10-11. Additionally, Officer Caraballo testified that, based on his previous experience as an undercover narcotics officer in Lancaster County, he suspected that the substance was cocaine. *See id.* at 11-12. Based upon the foregoing, we conclude that Officer Caraballo lawfully observed the contraband, the illicit nature of which was immediately apparent through the transparent container, during the course of a valid

safety search. **See Kendall**, 649 A.2d at 698 (concluding that weapons search of defendant's purse prior to transport was justified). Thus, the trial court did not err in denying Brophy-Desante's Motion to suppress the methamphetamine.[6]

In her second claim, Brophy-Desante asserts that the trial court erred in denying her Motion to suppress her statement to police that the substance found in her purse was methamphetamine. Brief for Appellant at 13. Brophy-Desante argues that she was subjected to a custodial interrogation

---

[6] Moreover, we conclude that, even if Officer Caraballo had exceeded the lawful scope of the search, the evidence obtained from Brophy-Desante's purse would be admissible pursuant to the inevitable discovery doctrine. **See Commonwealth v. Bailey**, 986 A.2d 860, 862 (Pa. Super. 2009) (stating that "[i]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct."). During the pretrial hearing, Officer Caraballo testified that the hospital's "internal security guidelines dictate a security officer will meet a person in police custody, [and] inventory every single item that person brings in…." N.T. (Pretrial Hearing), 2/11/16, at 12-13; **see also id.** at 17-18 (wherein Officer Caraballo testified that he is familiar with the hospital's intake procedures, and any items coming in with a person would be documented). Officer Caraballo also testified that he had previously received calls from the hospital regarding illegal items found during intake. **See id.** at 13. Thus, the challenged evidence would have been discovered by lawful means during the hospital's intake procedures. **See Bailey, supra**; **see also** Trial Court Opinion, 1/13/17, at 9-10 (wherein the trial court, considering the inevitable discovery doctrine, concluded that the contraband would have been lawfully discovered during the hospital's inventory).

without being informed of her ***Miranda*** rights. ***Id.*** at 13, 14, 16. Brophy-Desante also claims that Officer Caraballo's questions were intended to elicit an incriminating response. ***Id.*** at 16-17.

> Statements made during the custodial interrogation are presumptively involuntary, unless the accused is first advised of … ***Miranda*** rights. ***Commonwealth v. DiStefano***, 782 A.2d 574, 579 (Pa. Super. 2001), ***appeal denied***, [806 A.2d 858 (Pa. 2002)]. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." ***Miranda***, [384 U.S. at 444]. "The ***Miranda*** safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." ***Commonwealth v. Gaul***, [912 A.2d 252, 255 (Pa. 2006), ***cert. denied***, 552 U.S. 939 (2007)]. Thus, "interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect." ***Commonwealth v. Ingram***, 814 A.2d 264, 271 (Pa. Super. 2002), ***appeal denied***, [821 A.2d 586 (Pa. 2003)]. "In evaluating whether ***Miranda*** warnings were necessary, a court must consider the totality of the circumstances…." ***Gaul, supra.***

>> Whether a person is in custody for ***Miranda*** purposes depends on whether the person is physically denied of [her] freedom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [her] freedom of action is being restricted.

> ***Commonwealth v.*** [***Williams***, 650 A.2d 420, 427 (Pa. 1994)] (internal citations omitted).

*Commonwealth v. Gonzalez*, 979 A.2d 879, 887-88 (Pa. Super. 2009); *see also Commonwealth v. Johnson*, 42 A.3d 1017, 1028 (Pa. 2012) (stating that "[t]he standard for determining whether an encounter with the police is deemed 'custodial' is an objective one based on a totality of the circumstances with due consideration given to the reasonable impression conveyed to the person interrogated[.]" (citation and ellipses omitted)); *Commonwealth v. Page*, 965 A.2d 1212, 1218 (Pa. Super. 2009) (stating that "[a] person is considered to be in custody for the purposes of *Miranda* when the officer's show of authority leads the person to believe that she was not free to decline the officer's request, or otherwise terminate the encounter." (citation omitted)).

Here, the trial court concluded that Brophy-Desante was not subjected to a custodial interrogation, because the incriminating nature of the substance was already apparent at that time, and because Officer Caraballo's questions were not designed to evoke an incriminating response. *See* Trial Court Opinion, 1/13/17, at 11-13. We disagree.

At the time Officer Caraballo asked Brophy-Desante about the substance found in her purse, Brophy-Desante had already been informed that she was being taken into custody for a 302 commitment. *See* N.T. (Pretrial Hearing), 2/11/16, at 7-8, 14-16. Additionally, Brophy-Desante was physically restrained and placed in handcuffs shortly after the officers entered her residence. *See id.* at 8, 14. The questioning also occurred

- 11 -

after Officer Caraballo had informed Brophy-Desante that he would search everything Brophy-Desante brought with her. ***See id.*** at 9, 19. Further, during the pretrial hearing, Officer Caraballo indicated that Brophy-Desante had been taken into police custody. ***See id.*** at 14; ***see also id.*** at 9 (wherein Officer Caraballo described the standard procedure for taking a person into custody). Officer Caraballo also conceded that he did not advise Brophy-Desante of her ***Miranda*** rights. ***See id.*** at 15. Under these circumstances, Brophy-Desante would not have reasonably believed that she was free to leave or terminate the encounter. We therefore conclude that Brophy-Desante was in custody for the purposes of ***Miranda*** at the time Officer Caraballo questioned her about the substance found in her purse. ***See Gonzalez, supra***; ***see also Page, supra***. Thus, Brophy-Desante's statement should have been suppressed. However, because we conclude that the methamphetamine was seized pursuant to a lawful search, and would have been discovered and identified irrespective of whether Brophy-Desante made the incriminating statement, we affirm the judgment of sentence. ***See Ingram***, 814 A.2d at 271-72 (concluding that, despite a ***Miranda*** violation, defendant's motion to suppress was properly denied where evidence inevitably would have been discovered in a lawful search incident to arrest).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2017