J-A14004-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRETT RAMON WELLS | : | |
| | : | |
| Appellant | : | No. 708 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 8, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008186-2018

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                FILED OCTOBER 23, 2020

Appellant, Brett Ramon Wells, appeals from the judgment of sentence entered on April 8, 2019, in the Allegheny County Court of Common Pleas. We affirm.

In its opinion filed on September 13, 2019, the trial court summarized the facts of this case as follows:

As of May 2018, Officer James Goss was a member of the City of McKeesport Police Department for over 13 years.  See Hearing Transcript dated February 26, 2019, at page 4, (hereafter "H.T.")  On May 30, 2018, at 12:58 a.m., Officer Goss was at the intersection of Bowman and Linden Avenues in McKeesport on a traffic detail. (H.T. 6.)  He was in a uniformed capacity and marked police vehicle, and had a fellow officer with him. (H.T. 6.) Officer Goss observed a black 2013 Cadillac go through the stop sign at Bowman and Linden, and proceeded to attempt to initiate a traffic stop by activating audio and visual warnings. (H.T. 7.) The vehicle pulled over a few blocks later. (H.T. 8.)  Officer Goss pulled behind the vehicle and illuminated the interior of the vehicle with his spotlight. (H.T. 8.)  Officer Goss noticed that the driver, the sole occupant of the vehicle, appeared nervous in that he was

making hurried movements with his right side of his body towards the center console. (H.T. 8-9.) This movement alerted Officer Goss to the potential of the driver possessing, or weapons being stored in the vehicle, and thus a consequent concern for officer safety. Officer Goss and his partner approached the vehicle. (H.T. 9.) Officer Goss went to the driver side of the vehicle and requested information from the operator, who was identified as Appellant, Brett Wells. (H.T. 9-10.) Upon inquiry by Officer Goss, the Appellant denied having any weapons. (H.T. 10.) Nonetheless, Officer Goss, based on his training and observation of the Appellant's nervous and rapid movements, had a serious concern for officer safety and requested that Appellant exit the vehicle. (H.T. 10-11.)

The Appellant immediately became belligerent and had to be physically removed from the vehicle for the purpose of a pat-down. (H.T. 10-11.) Once removed, Officer Goss patted down the Appellant and during the course of the pat-down Officer Goss felt a bulge in the watch pocket of the Appellant's jeans. (H.T. 11.) Based on his training and 13 years of police experience, he immediately recognized the bulge to be bundles of heroin. (H.T. 11-12.) The Appellant was thereafter placed under arrest[.]

Trial Court Opinion, 9/13/19, at 2-4. After Appellant was arrested and seated in the police vehicle, Officer Goss conducted an inventory of Appellant's automobile. The inventory was necessary because Appellant's car could not legally remain where it was situated, and it was going to be impounded. N.T., 2/26/19, at 13-14. During the inventory, Officer Goss discovered more drugs inside Appellant's vehicle. Id. at 14.[1] Appellant was charged with possession

_____

[1] Appellant did not challenge the legality of the inventory of his car, and Appellant's counsel stipulated that drugs were discovered inside Appellant's vehicle during the inventory. N.T., 2/26/19, at 14.

with intent to deliver a controlled substance ("PWID"),[2] possession of a controlled substance,[3] possession of paraphernalia,[4] and failing to stop at a stop sign.[5] Criminal Information, 8/13/18.

On October 10, 2018, Appellant filed a motion to suppress physical evidence. The trial court held a hearing on Appellant's motion on February 26, 2019. On March 29, 2019, the trial court denied Appellant's suppression motion, and the case proceeded to trial.

On April 2, 2019, following a nonjury trial, Appellant was found guilty of all charges. On April 8, 2019, the trial court sentenced Appellant to a term of eleven and one-half to twenty-three months of incarceration followed by two years of probation for PWID and a concurrent one-year term of probation for possession of paraphernalia. The trial court imposed no further penalty on the remaining counts.

Appellant filed a timely appeal on May 8, 2019. Both the trial court and Appellant complied with Pa.R.A.P. 1925. On appeal, Appellant raises the following issues for this Court's consideration:

> [1.] Did [A]ppellant's conduct in response to the traffic stop provide reason to believe that he was armed and dangerous and that a pat[-]down was justified?

_____

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(32).

[5] 75 Pa.C.S. § 3323(b).

[2.] Was it immediately apparent to the officer, from his patting of [A]ppellant's watch pocket, that contraband was inside that pocket?

[3.] Was the search of [A]ppellant's vehicle following the seizure of the heroin from his watch pocket lawful?

Appellant's Brief at 4.

In an appeal challenging the denial of a motion to suppress, our Supreme Court has stated the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. … Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013).

At the outset, we note that Appellant has not challenged the legality of the traffic stop. Rather, in his first issue, Appellant avers that after the traffic stop, there was no evidence supporting the officer's conclusion that Appellant

- 4 -

was armed or that a pat-down was necessary. Appellant's Brief at 11. After review, we conclude that Appellant is entitled to no relief on this issue.

"When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the driver to step out of the vehicle as a matter of right." Commonwealth v. Parker, 957 A.2d 311, 314-315 (Pa. Super. 2008) (citations and internal quotation marks omitted). Case law concerning when and under what circumstances a police officer may conduct a pat-down search provides as follows:

> "[T]he [F]ourth [A]mendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.'" Commonwealth v. Baer, 439 Pa. Super. 437, 654 A.2d 1058, 1059 (1994). Warrantless searches and seizures (such as occurred in this case) are unreasonable per se, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception, the Terry "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." Commonwealth v. Fitzpatrick, 446 Pa. Super. 87, 666 A.2d 323, 325 (1995); Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
>
> Terry further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." Terry, 392 U.S. at 24, 88 S.Ct. 1868. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. Terry, 392 U.S. at 30, 88 S.Ct. 1868. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417–418, 101 S.Ct. 690. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. Commonwealth v. Arch, 439 Pa. Super. 606, 654 A.2d 1141, 1144 (1995). If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. Commonwealth v. Gibson, 536 Pa. 123, 638 A.2d 203, 206-207 (1994).

The Terry totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. See Commonwealth v. Mesa, 453 Pa. Super. 147, 683 A.2d 643, 646 (1996). Moreover, the principles of Terry apply to all occupants of the stopped vehicle, not just the driver. See id. (applying the principles of Terry to determine whether the police were permitted to conduct a pat down search of the passenger in a vehicle that was stopped pursuant to a motor vehicle violation). Indeed, as we have observed, "roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." In re O.J., 958 A.2d 561, 564 (Pa. Super. 2008) (en banc), citing Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Commonwealth v. Simmons, 17 A.3d 399, 402-404 (Pa. Super. 2011).

In the instant case, Officer Goss stated that after Appellant failed to stop at a stop sign at the intersection of Bowman Avenue and Linden Street, the officer effectuated the motor-vehicle stop. N.T., 2/26/19, at 6. Officer Goss testified that he shined his spotlight on Appellant's vehicle illuminating the

inside of the car. Id. at 8, 18. The officer stated that Appellant, who was the sole occupant and driver of the vehicle, looked back at the police vehicle "nervously," and Appellant began reaching toward his waistband and in the direction of the center console of the vehicle. Id. at 8-9. The officer testified that based on his experience, Appellant's nervous movements were suspicious. Id. at 9. When Officer Goss requested Appellant to exit the vehicle, Appellant became belligerent, and Officer Goss and his partner, Officer Cencich had to physically remove Appellant from the car. Id. at 10. Based on his observations, Officer Goss testified that "officer safety" required him to conduct a pat-down search for weapons. Id.

After review, we discern no abuse of discretion or error of law in the trial court's conclusion that under the totality of the circumstances, the pat-down was lawful. Officer Goss was permitted as a matter of right to ask Appellant to exit the vehicle. Parker, 957 A.2d at 315. Appellant's furtive movements and suspicious behavior, in addition to Appellant's belligerent conduct, supported Officer Goss's reasonable belief that Appellant may be armed, and a pat-down was necessary for the officers' safety. See Commonwealth v. Mack, 953 A.2d 587, 590 (Pa. Super. 2008) (stating that allowing police officers to control all movement in a traffic encounter is a reasonable and justifiable step towards protecting their safety, and if during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct that leads him to reasonably believe that the suspect may be armed and

dangerous, the officer may conduct a pat-down search for weapons) (citations omitted). For these reasons, we conclude that Appellant is entitled to no relief.

Next, Appellant alleges that the trial court erred in concluding that during the pat-down, the criminal character of the contents of his pocket was immediately apparent. Appellant's Brief at 14. We disagree with Appellant's assertion.

"[I]f an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Minnesota v. Dickerson, 508 U.S. 366, 367 (1993); see also Parker, 957 A.2d at 315 ("If it becomes clear to the police officer during the pat-down that the suspect does not have any weapons on his person, the plain feel doctrine exists as an exception to allow for the seizure of non-threatening contraband when the officer feels an object whose mass or contour makes its criminal character immediately apparent.") (internal citations and quotation marks omitted). Contraband is "immediately apparent" when "the officer readily perceives, without further exploration or searching, that what he is feeling is contraband." Parker, 957 A.2d at 315 (citation omitted). The officer may not seize the object if, "after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search." Id. (citation omitted).

During direct examination by Assistant District Attorney Christopher Decker, Officer Goss described the pat-down as follows:

Q. Did you notice anything during the pat down, however?

A. Yes.

Q. What was that?

A. A package of narcotics in his right watch pocket of his pants.

Q. Was that during the pat down for weapons?

A. Yes.

Q. Was that while the pat down was going on?

A. Yes.

Q. Could you describe for the [c]ourt how it was that you came to notice that?

A. I felt his right watch pocket and immediately felt packaged heroin, two bundles of heroin wrapped with rubber bands.

Q. And --

A. Approximately 21 bags.

Q. As you were --

A. Two separate quantities in one pocket.

Q. As you were doing this pat down, officer, was it immediately apparent to you that this was some kind of contraband?

A. Yes, from my training and experience, yes.

Q. Did you have to do any further squeezing or prodding of the item?

A. No, I immediately detained him.

Q. Did you retrieve the item out of his pocket?

A. Yes, after he was handcuffed and detained, I removed it.

Q. And were you able to identify the item that you did feel?

A. Yes, it was, as I said 21, glassine stamp bags of heroin in two separate quantities, one of ten and one of eleven, and they both had rubber bands around the bundles.

N.T., 2/26/19, at 11-12.

Furthermore, during cross-examination by Appellant's counsel, Officer Goss reiterated that he immediately identified the contraband in Appellant's pocket as bundles of heroin without pressing or manipulating the package. Id. at 31. Officer Goss testified as follows:

Q. Isn't it correct, officer, that you didn't know what it was?

A. No, from my training and experience –

Q. You suspected that it could be --

A. Yes.

Q. -- correct?

A. Yes, it felt like packaged heroin to me.

Q. All right. Describe what it felt like for me.

A. Two individual glassine bundles of heroin wrapped in rubber bands.

Q. You couldn't tell it was glassine by feeling that, could you, officer, correct? You couldn't say –

A. I felt what I determined to be a rubber band and packaged heroin two times in his pocket. They were on top of each other.

Q. By just rubbing your hand over it?

A. When you make enough heroin-related arrests, you know what it feels like.

Id. at 31-32.

Officer Goss's testimony is unequivocal. Officer Goss stated that based on his experience, during the pat-down, he immediately recognized that what he felt were packages of heroin. N.T., 2/26/19, at 11-12, 31-32. Officer Goss identified the packages of heroin immediately, without manipulating Appellant's pocket or its contents. Id. at 12, 31. The trial court credited Officer Goss's testimony, as it was free to do, and we do not reweigh the trial court's credibility determinations. Gallagher, 896 A.2d at 585. We thus conclude that the record supports the trial court's ruling, and pursuant to our standard of review, we discern no error or abuse of discretion in the trial court denying Appellant's motion to suppress the heroin seized as a result of the pat-down. Eichinger, 915 A.2d at 1134; Parker, 957 A.2d at 315.

In his final issue, Appellant avers that the search of his automobile was unlawful. After review, we conclude that there is no merit to this claim of error.

Prior to reaching the merits of this issue, we first note that the trial court concluded that Appellant abandoned his challenge to the search of his car. Trial Court Opinion, 9/13/19, at 9. The trial court stated: "This claim was abandoned at the time of the suppression hearing and thus cannot be raised on appeal." Id. (citing N.T., 2/26/19, at 13-14).

At the suppression hearing, Appellant's counsel stated that he was abandoning paragraph "c" of the suppression motion. N.T., 2/26/19, at 14. Paragraph "c" of the suppression motion stated in relevant part as follows: "The search of the vehicle was conducted by police officers without probable cause, reasonable suspicion, or consent[.]" Omnibus Motion, 10/10/18, at ¶2(c). Thus, Appellant abandoned the issue concerning whether the police had probable cause, reasonable suspicion, or consent to search his car. N.T., 2/26/19, at 14.

However, we cannot conclude that Appellant abandoned his claim that the search of his car was illegal if the antecedent pat-down search and discovery of the heroin in his pocket was illegal. Appellant counters the trial court's conclusion regarding waiver and states that the only aspect of the suppression motion that was abandoned was the claim that the search of the vehicle was not supported by probable cause, reasonable suspicion, or consent. Appellant's Brief at 17; N.T., 2/26/19, at 14-15. Appellant asserts that it would have been absurd to conclude that Appellant was challenging the seizure of the twenty-one packets of heroin from his pocket but not the seizure of the 1,380 or so packets of heroin found in the vehicle. Appellant's Brief at 18.

Appellant maintains the position that the heroin discovered in his pocket was seized by means of an illegal pat-down. Appellant's Brief at 17. If the pat-down was illegal, then there was no lawful basis upon which the police

could search Appellant's vehicle; therefore, the drugs discovered in the car were fruit of the poisonous tree.[6]  *Id.*  However, Appellant does concede that if the seizure of the heroin from his pocket during the pat-down was lawful, the "location of the vehicle made towing necessary," and "[i]f towing was necessary, an inventory was necessary."  *Id.* at 17.  In sum, Appellant's argument is as follows: if the pat-down was illegal, the heroin found in the car was fruit of the poisonous tree; however, if the pat-down was legal, the police were permitted to tow Appellant's car and take an inventory which then lawfully revealed the additional packets of heroin.

As discussed above, we determined that the pat-down and seizure of the heroin from Appellant's pocket was legal.  Once the officer discovered heroin in Appellant's pocket, Appellant was lawfully arrested.  Moreover, it is undisputed that Appellant's vehicle was located in an area where it could not be parked or legally remain.  N.T., 2/26/19, at 13.  As noted, Appellant does not dispute the necessity for the vehicle to be towed or the legality of the inventory search if the pat-down was legal.  Appellant's Brief at 17.  During the inventory of Appellant's car, the police discovered additional packages of

---

[6]  "The fruit of the poisonous tree doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts."  *Commonwealth v. Torres*, 177 A.3d 263, 276 (Pa. Super. 2017) (internal quotation marks and citation omitted).  A challenge that evidence constituted fruit of the poisonous tree requires an "antecedent illegality."  *Id.*  Herein, Appellant identifies the pat-down and seizure of the contraband from his pocket as the antecedent illegality.  Appellant's Brief at 17; N.T., 2/26/19, at 14.

heroin. Thus, the heroin discovered in Appellant's car was the result of a lawful inventory and not the fruit of an illegal search. Therefore, we conclude that Appellant's final issue is meritless.

For the reasons set forth above, we discern no basis upon which to disturb the denial of Appellant's motion to suppress, and we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins this Memorandum.

Judge Musmanno files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2020